STATE OF NEBRASKA, APPELLEE, V. THOMAS EDWARD NESBITT, APPELLANT.

409 N.W.2d 314

Filed July 17, 1987.    No. 86-400.

Thomas M. Kenney, Douglas County Public Defender, Thomas C. Riley, and Brian S. Munnelly, for appellant.

Robert M. Spire, Attorney General, and Lynne Fritz, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

WHITE, J.

This is an appeal from the district court for Douglas County. The appellant, Thomas Edward Nesbitt, was convicted by jury verdict of murder in the first degree and sentenced to a term of life imprisonment in the Nebraska Penal and Correctional Complex. On appeal the appellant alleges as error that the trial court improperly permitted the introduction of evidence concerning an alleged prior sexual assault, that the district court incorrectly overruled the appellant's motions to dismiss the case at the close of the State's case and at the close of all the evidence, and that the district court incorrectly overruled the defense's motion for mistrial due to prosecutorial misconduct.

The relevant facts are as follows. During the early morning hours of November 30, 1975, Gayla Jorgensen answered a phone call from Kathleen Ray, a former high school classmate, inviting Jorgensen and her cotenant, Mary Kay Harmer, to a party. The party was described as a "housewarming party" with a group of their schoolmates. Sometime later that morning Ray and another woman, later identified as Brigitte Kohlert, arrived at the women's apartment and persuaded Harmer to accompany them to the party. Jorgensen declined the invitation. Ray testified that the three women drove to 2619 North 15th Street, a house which she shared with the appellant.

Ray and Kohlert stated they left the "party" shortly after arriving, leaving Harmer and the appellant alone. Ray stated that as she was leaving the Nesbitt house she passed Wayne

Bieber on his way to appellant's house. Bieber was described at trial as a friend and next door neighbor of Nesbitt's. Bieber stated that he was not at the party and remained home that night. Ray went back and forth between Nesbitt's house and Bieber's house throughout the night. Ray went back to the house twice during the morning, but did not go inside.

The appellant was the only person who testified as to what happened at the party. Nesbitt testified that Bieber, Ray, and Kohlert remained at the party for some time, with Ray and Kohlert leaving to go next door. Bieber left for a while and later returned. At some point during the morning, according to Nesbitt, the deceased went to the bathroom and did not return. Nesbitt went to check and discovered Harmer lying on the floor in a pool of vomit. Nesbitt stated he knew she was dead. He testified that he did not call the authorities because he could not trust them.

There is testimony from both Ray and Bieber that the appellant appeared upset. Ray said that he asked her what Harmer would do if she were raped, and she told him Harmer would call the police. Nesbitt also asked her if she could "handle it" if the "Feds" were involved. Bieber stated that the appellant told him he might have "fucked up," and the two discussed whether Harmer should be let go or killed.

Ray testified that the appellant burned throw rugs, and Bieber testified that he burned clothing at Nesbitt's request. Ray stated that Nesbitt had cleaned the house later that day and asked her to clean also. Ray said that she cleaned up what she thought was blood in front of the refrigerator, which Nesbitt told her resulted from a bloody nose the deceased suffered. Ray also told a police officer that Nesbitt pointed to a stain on the shower curtain, telling her it was blood. Bieber said that he had smelled starter fluid in the house that morning and that Nesbitt requested him to find lye that afternoon, although Bieber stated they had no lye and Nesbitt stated he did not pour any such substance on the body.

Ray was told to say that Harmer had been at their house the night before, but was gone when they awoke in the morning. Ray said she was told by Nesbitt, "Let's just say she died of an overdose."

According to Nesbitt, Harmer's clothing was removed to obscure her identification, and the body was stored, wrapped in a carpet, in Bieber's garage until the remains were dumped in an Owens Landing manhole. Owens Landing is a partially developed housing subdivision near Carter Lake, Iowa. An engineering crew found the remains 9 years later.

At trial forensic experts testified that they were unable to determine the cause of death. Holes in the skull suggest bullet holes, but the specific characteristics associated with bullet holes are not present. Etchings on the teeth and skull suggest a caustic substance was poured on the head while tissue was still present. The sludge samples taken from the manhole revealed high calcium and pH levels, which are consistent with caustic alkaline substances such as lye.

Appellant's first assignment of error alleges that the trial court abused its discretion in permitting the State to introduce evidence as to a prior uncharged sexual assault allegedly committed by the appellant. Neb. Rev. Stat. § 27-404(2) (Reissue 1985) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The evidence at issue is the testimony of Michele McKeever. McKeever testified that she was abducted by the appellant from the parking lot of her place of employment on November 11, 1974. She related that Nesbitt took her to one house, then to another house, identified as 2619 North 15th Street, where she was raped at least twice by the appellant. She was threatened with death should she report the incident, was forced to point out the locations of her family's homes, and was told they, too, would be killed. McKeever stated that she escaped the next morning.

Defense counsel objected on the ground that the probative value of the testimony was outweighed by its prejudicial effect. After a hearing out of the presence of the jury, a limiting instruction was given by the trial judge to the effect that the

testimony of McKeever may only be considered for the purposes set out in § 27-404(2). The appellant now argues that the State is suggesting that if McKeever was assaulted, so, too, was Harmer, pointing specifically to the statement made by the prosecution during closing argument that the deceased went through the same thing McKeever suffered.

The admission of evidence is largely left to the sound discretion of the trial court and will not be overruled on appeal absent a showing of an abuse of discretion. *State v. Wilson*, 225 Neb. 466, 406 N.W.2d 123 (1987). Section 27-404(2) is an inclusionary rule of evidence permitting the use of relevant other crimes, wrongs, or acts for the purposes enumerated therein.

In *State v. Ellis*, 208 Neb. 379, 303 N.W.2d 741 (1981), we were faced with this issue in the context of a murder case not unlike the case at hand. There, the deceased's skeletal remains were discovered some years after her disappearance. Evidence of prior assaults by the defendant was admitted pursuant to § 27-404(2). The evidence was admitted to show similarities in the method of operation, identity, knowledge by the defendant of the area in which the remains were found, scheme, and plan. The evidence showed that the appellant used the same methods and took one of his victims quite near the spot where the deceased's remains were discovered. *State v. Kern*, 224 Neb. 177, 397 N.W.2d 23 (1986), is another murder case in which the appellant's prior assault was admitted under § 27-404(2). The similarities which made the prior assault probative include the appellant's strangulation of both victims and the context within which each assault took place. Each woman was, at the time of the assault, married to the appellant, and in each instance the woman was attempting to end the relationship. The evidence of the prior assault was admitted as being probative of the issues of intent and method.

Here, the district court found the testimony of McKeever was relevant under § 27-404(2) to show location, scheme, plan, and motives. Briefly, both women were taken to Nesbitt's home, and both were alone with the appellant. Nesbitt was obviously concerned about the authorities being told of McKeever's assault, as evidenced by his intimidation of the

victim. The testimony of Bieber and Ray makes apparent that he was concerned what Harmer would do if she were raped, and whether Ray could "handle it" if the authorities questioned her. In the McKeever case Nesbitt stopped at the home of another person and spoke with him for a few minutes before going to Nesbitt's house. Bieber and Nesbitt both testify to conversing with other people in order to be advised on what course of action to pursue.

The appellant argues that the probative value of McKeever's testimony is outweighed by its prejudicial effect on him. While the admission of evidence is largely left to the sound discretion of the trial judge, it is subject to the overriding concerns of Neb. Rev. Stat. § 27-403 (Reissue 1985), which provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

The testimony of McKeever is relevant. Relevant evidence is to be excluded only if there is a danger of unfair prejudice, confusion, misleading the jury, undue delay, waste of time, or needless accumulation of evidence. *State v. Bostwick*, 222 Neb. 631, 385 N.W.2d 906 (1986). We cannot say that the appellant was unfairly prejudiced by the introduction of McKeever's testimony, and the admission of the evidence was not an abuse of discretion. *State v. Wilson, supra; State v. Kern, supra*.

Appellant's brief argues that the McKeever assault was uncharged conduct. We find this distinction to be irrelevant. The statute makes no such distinction, and uncharged conduct has previously been admitted under § 27-404(2). See, *State v. Kern, supra; State v. Ellis, supra; State v. Swiney*, 179 Neb. 230, 137 N.W.2d 808 (1965). This assignment of error is meritless.

Nesbitt next assigns as error that the trial court erred in failing to grant the defense's motions to dismiss at the close of the State's case and at the close of all the evidence, on the ground that the State failed to prove its case by showing that the decedent met her death feloniously at the hands of the defendant. We agree that there is no direct evidence as to how

Harmer died. However, circumstantial evidence is sufficient to support a conviction if the evidence and any reasonable inferences which can be drawn from the evidence establish the defendant's guilt beyond a reasonable doubt. *State v. Donnelson*, 225 Neb. 41, 402 N.W.2d 302 (1987); *State v. Kane*, 224 Neb. 245, 397 N.W.2d 628 (1986).

The appellant relies heavily on the case of *Reyes v. State*, 151 Neb. 636, 38 N.W.2d 539 (1949). There, the defendant's second degree murder conviction was overturned on appeal on the ground that the State did not show that the deceased met her death as a result of the criminal actions of Reyes. The deceased met her death after jumping out of the defendant's car. This court held that there was no evidence to suggest that the injuries were feloniously inflicted and the conviction must be reversed. The *Reyes* case may be distinguished from this case on the basis that in *Reyes* evidence from the autopsy showed no evidence of a struggle; in short, no evidence that the deceased met her death feloniously. Here, the evidence suggests the deceased met her death feloniously, at the hands of the appellant, as opposed to *Reyes*, where the autopsy provided evidence to suggest the deceased did not meet her death at the hands of the defendant.

Although the evidence here is circumstantial, circumstantial evidence is entitled to be treated the same as direct evidence, and the State does not have the burden of disproving every hypothesis but that of guilt in order to sustain a conviction based upon circumstantial evidence. *State v. Buchanan*, 210 Neb. 20, 312 N.W.2d 684 (1981).

The appellant's brief also calls attention to the alleged contradictions in the testimony of McKeever. To that we only note that the conflicts in evidence and the credibility of witnesses are issues for the trier of fact. *Donnelson, supra.*

Taking a view of the evidence most favorable to the State, the evidence, if believed, would tend to prove that Nesbitt was a member of a semisecret society, the Hell's Angels, and that before and after the death of Harmer he used aliases, worked sparsely, and had on hand quantities of various controlled substances. Nesbitt lived off the income of Ray's two jobs and identified her as his "old lady." The evidence suggests that the women associated with Hell's Angels were referred to as "old

ladies" or "sweeties." An "old lady" was a woman who had a long-term relationship with a Hell's Angel and who took care of the home and supported the Hell's Angel so he would be free to attend to club business. The Hell's Angels distrusted all law enforcement personnel and did not discuss Angels' business even with their old ladies. The evidence suggests that "sweeties" were women with no long-term relationship with an Angel, and were often picked up for an evening solely for sexual purposes. The evidence suggests sweeties were often at Hell's Angels' parties and that the victim was a sweetie. "Party" is a term used to describe events at which drugs were freely available and used.

The jury could infer that Harmer was called to the party at appellant's request for purposes of sexual gratification and that the identity of the group and the location were withheld from her at Nesbitt's suggestion. Drugs were furnished to the victim and a sexual assault or at least an attempt was made. The victim was struck to "keep her in line," and sometime during the orgy she died. A strong inference arises from the testimony of Bieber and Ray that a motive for her killing was concealment of the assault. Nesbitt scrupulously cleaned the house, requiring Ray to help him, and burned or had burned the victim's clothes and throw rugs in the house. The nude, dead body was stored in a garage for about 36 hours until it could be hidden in an unused manhole in a remote area. Thereafter, a caustic substance was poured over her body to hasten decomposition and hinder identification. The State proved motive, opportunity, and a skeleton of a victim who obviously met death in a nonnormal manner.

In summary, there was sufficient evidence introduced at trial, if believed by the jury, to establish the elements of the crime of murder in the first degree, and the trial court's denials of the defense's motions to dismiss were without error. *State v. West*, 223 Neb. 241, 388 N.W.2d 823 (1986). When reviewing the sufficiency of the evidence, it is not the province of this court to resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of the explanations, or weigh evidence. Such matters are for the trier of fact and must be sustained if, taking the view of the evidence most favorable to the State, there is sufficient evidence to support the

conviction.

Appellant's third and final assignment of error alleges that the district court erred in failing to grant the defense's motion for mistrial on the grounds of prosecutorial misconduct. At trial the State attempted to elicit testimony concerning sexual assaults Nesbitt may have committed on Ray during their relationship. The prosecution asked Ray if she was ever sexually assaulted by the appellant. Defense counsel objected, and the question was answered in the judge's chambers, out of the hearing of the jury. The jury was properly admonished to disregard the question and not to try to speculate as to what the answer to the question may have been. Defense counsel's motion for mistrial was denied.

As the appellee's brief notes, the decision to grant a motion for mistrial is squarely within the sound discretion of the trial court and will be upheld on appeal absent a showing of abuse of discretion. *State v. Borchardt*, 224 Neb. 47, 395 N.W.2d 551 (1986). Appellant argues that it was the State's intent to elicit inadmissible testimony. Regardless of the State's intent, we cannot say the appellant was prejudiced by the question. The answer was given out of the presence of the jury, and the jury was properly admonished. This assignment of error is without merit.

AFFIRMED.

KRIVOSHA, C.J., concurs in the result.