**Thomas Edward NESBITT, Petitioner,**

v.

**Frank X. HOPKINS, Respondent.**

No. 4:CV91–3364.

United States District Court,
D. Nebraska.

March 1, 1995.

Thomas Edward Nesbitt, Nebraska State Penitentiary, Lincoln, NE, Pro Se.

Thomas C. Riley, Douglas County Public Defender's Office, Omaha, NE, Donald B. Fiedler, Donald Fiedler, Omaha, NE, for plaintiff.

Delores N. Coe–Barbee, Attorney General, Lincoln, NE, for defendant.

## MEMORANDUM AND ORDER

KOPF, District Judge.

This matter is before the court on Magistrate Judge David L. Piester's report and recommendation (Filing 104) suggesting that Petitioner's petition for habeas corpus be denied. Petitioner filed a lengthy objection (Filing 109) to the report and recommendation. Petitioner has also appealed from Judge Piester's order (Filing 108) denying an evidentiary hearing. By letter (Filing 112) Petitioner apparently requests that additional counsel be appointed to assist him. Finally, Petitioner has filed a motion for extension of time (Filing 114) to file an amendment to the objection and statement of appeal and related briefs.

I have conducted a de novo review of the report and recommendation and the related objection. With a brief qualifying observation, I adopt the report and recommendation after de novo review.

I shall comment only briefly on Petitioner's "double jeopardy" argument. Petitioner argues that felony murder and premeditated murder are simply two ways of committing the same crime; therefore, when the trial court dismissed the felony murder charge for lack of sufficient evidence, but allowed the premeditated murder charge to proceed, the court violated the Double Jeopardy Clause of the Constitution. Even if I agreed with Petitioner's premise, I would not agree with his conclusion.

Applying the *Blockburger* test, *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), Judge Piester found that felony murder and premeditated murder are separate offenses; thus, the Double Jeopardy Clause was not violated when the state proceeded with the charge of premeditated murder but not the felony murder charge. Judge Piester found that the Double Jeopardy Clause was not implicated because Petitioner had not been put in jeopardy twice for the *same offense.* At least one federal appellate court arrived at the same conclusion in a nearly identical case. *Clayton v. Crist,* 860 F.2d 1088 (9th Cir.1988), *cert. denied,* 490 U.S. 1028, 109 S.Ct. 1763, 104 L.Ed.2d 198 (1989) (tbl.) (text available in Westlaw, 1988 WL 57698, at *1–2) (applying *Blockburger* and affirming dismissal of habeas corpus petition over "double jeopardy" objection where prosecution dismissed a premeditated murder count at trial but was allowed to proceed on felony murder count).

■ Assuming for the sake of argument, however, that I were to agree with Petitioner that felony murder and premeditated murder are alternative ways of committing the *same crime,* to wit, murder in the first degree, Petitioner would still not prevail for he would not have been *twice* put in jeopardy. At worst, Nesbitt was tried *once* on *alternative* theories of murder. American law has long permitted the assertion of alternative theories of first-degree murder in *one* murder prosecution without concern that the defendant is subjected to "double jeopardy" if convicted on one theory but acquitted on the other. *See, e.g., Delap v. Dugger,* 890 F.2d 285, 314 (11th Cir.1989), *cert. denied,* 496 U.S. 929, 110 S.Ct. 2628, 110 L.Ed.2d 648 (1990) (where defendant was acquitted of felony murder in first trial because trial judge believed evidence insufficient to support theory, but defendant was also convicted at first trial on theory of premeditated murder involving the same victim, and where first conviction set aside on appeal, acquittal on felony-murder theory barred reprosecution for felony murder, but acquittal did not bar reprosecution and conviction on premeditated murder theory). *Cf. Schad v. Arizona,* 501

U.S. 624, 648–52, 111 S.Ct. 2491, 2505–07, 115 L.Ed.2d 555 (1991) (Scalia, J., discussing the development of alternative theories of first-degree murder in America, including felony murder and premeditated murder, and concurring in the Supreme Court's finding that the Constitution was not violated where a defendant was prosecuted and convicted on alternative theories of first-degree murder (felony murder and premeditated murder) even though the jury made no explicit determination of which theory it relied upon to convict the defendant).

As to Petitioner's appeal from the magistrate judge's denial of an evidentiary hearing, Judge Piester's decision not to hold an evidentiary hearing was correct as a matter of law, and not clearly erroneous from a factual point of view. Moreover, to the extent that the proper standard of review is de novo, I believe Judge Piester's decision was correct.

As to Petitioner's request for yet another lawyer, I shall deny the request for the reason that Petitioner is adequately represented by his present lawyer.

■ As to Petitioner's request for additional time, I shall deny the request. Petitioner has already been given two extensions of time. (Filings 106, 110.) Moreover, the detailed documents that Petitioner filed as "objections," (Filing 109, at 1–17), and "statement of appeal," (Filing 108, at 1–4), are also in essence briefs. Still further, Petitioner does not tell me what it is he wishes to address further that has not already been fully explored. There is simply no good reason given for further delay in this case, now more than three years old.

Accordingly,

IT IS ORDERED that:

(1) The magistrate judge's report and recommendation (Filing 104) is adopted;

(2) Petitioner's objection (Filing 109), appeal (Filing 108), request for additional coun-

sel (Filing 112), and motion for extension of time (Filing 114) are denied;

(3) A separate judgment shall be entered specifying that "judgment is entered providing that the petition for habeas corpus is denied on the merits and dismissed."

PIESTER, United States Magistrate Judge.

Before the court for consideration is the petition for writ of habeas corpus filed by Petitioner Thomas Edward Nesbitt. (Filing 26.) For reasons discussed more fully below, I shall recommend that the writ be denied.

## BACKGROUND

On March 7, 1986, petitioner was convicted of first degree murder and sentenced to life imprisonment. He appealed the conviction to the Nebraska Supreme Court, raising three claims: 1) improper use of character evidence; 2) insufficient evidence; and 3) prosecutorial misconduct. The court upheld the conviction, finding no merit to any of petitioner's claims. *State v. Nesbitt*, 226 Neb. 32, 409 N.W.2d 314 (1987). On September 7, 1990, petitioner filed a motion for postconviction relief claiming, *inter alia*, the conviction violated his double jeopardy rights. The postconviction motion was still pending in the Douglas County District Court as of the submission date of petitioner's brief, July 13, 1994.

Petitioner raises two claims in his petition: 1) double jeopardy; and 2) due process arising out of a bail denial.[1] (*See* Filing 26.) In filing 27 I concluded that petitioner had properly exhausted his due process claim by presenting it to the Nebraska Supreme Court.[2] I further concluded, however, that petitioner had failed to similarly present his double jeopardy claim, and that therefore that claim was not exhausted. Pursuant to *Rose v. Lundy*, 455 U.S. 509, 518–19, 102 S.Ct. 1198, 1202–03, 71 L.Ed.2d 379 (1982), I granted petitioner the option of dismissing

---

1. After petitioner filed his postconviction action petitioner filed a motion to be released on bail for the pendency of the post-conviction motion. Petitioner claimed he had a due process right to bail pursuant to a purported guarantee to bail in the Nebraska Constitution. His motion was denied. Petitioner claims the denial was appealed

to the Nebraska Supreme Court which summarily affirmed the denial of bail. *State v. Nesbitt*, 239 Neb. h (1992) (# 91–536 slip op.).

2. *See* note 1 *supra*.

his entire petition, without prejudice, or filing an amended petition deleting the "unexhausted" double jeopardy claim. In filing 29 Judge Urbom concluded that whether the double jeopardy claim was exhausted was unclear from the incomplete record then before the court. Without deciding whether the double jeopardy claim was properly presented, Judge Urbom directed that counsel be appointed and that respondent be directed to respond to the exhaustion issue. Judge Urbom later concluded that the double jeopardy claim had been fairly presented to the Nebraska Supreme Court in a brief in support of a motion for rehearing. (*See* Filing 43, at 2.) Judge Urbom further concluded that the fact that there may be a postconviction motion pending is "not controlling" to the exhaustion inquiry. (*See id.* at 3.)

Petitioner later filed a motion requesting leave to file an amended habeas petition. (Filing 75.) In filing 83 I concluded that the proposed (unexhausted) claims to be presented in that amended petition would render the petition a "mixed petition," requiring the *Rose v. Lundy* election referred to above. Petitioner refused to make such election until directed to do so by Judge Kopf. (*See* filing 95.) In filing 96 petitioner elected to proceed with his two original claims: 1) double jeopardy; and 2) due process arising out of a bail denial.[3]

## DOUBLE JEOPARDY

Despite the unnecessary length (sixty pages) and superficial complexity of petitioner's meandering argument,[4] his double jeopardy claim is straightforward. Petitioner was charged with first degree murder under two alternate theories: premeditation or felony murder (sexual assault). At the close of the state's evidence the trial court granted petitioner's motion for a directed verdict on the felony murder theory.[5] Peti-

---

**3.** As should become more clear during the course of the following discussion, no evidentiary hearing is necessary to resolve either of petitioner's claims; the determinative issues are entirely legal and there exist no material factual disputes as to those issues.

**4.** It appears from petitioner's briefs that appointed counsel did little more than sign his name to a brief prepared entirely or overwhelmingly by petitioner. If true, I do not believe such conduct conforms to this court's expectations of appointed counsel. While I am sensitive to the sometimes difficult and frustrating task of appointed counsel in balancing professional judgment with the often insistent demands of indigent clients, I do not believe such frustration provides justification for acting as a mere "rubber stamp" to a client's pleadings. Appointed counsel are obligated to represent their *pro bono* clients in the same professional and competent manner as paying clients. *See Anders v. California*, 386 U.S. 738, 745, 87 S.Ct. 1396, 1400, 18 L.Ed.2d 493 (1967). Such representation includes the lawyer's role as an officer of the court. *See* American Bar Association, *Model Rules of Professional Conduct*, Preamble; *In re Griffiths*, 413 U.S. 717, 730–33, 93 S.Ct. 2851, 2859–61, 37 L.Ed.2d 910 (1973) (Burger, C.J., dissenting); *see generally* Eugene R. Gaetke, *Lawyers as Officers of the Court*, 42 Vand.L.Rev. 39, 42 (1989); *cf. Nix v. Whiteside*, 475 U.S. 157, 174, 106 S.Ct. 988, 998, 89 L.Ed.2d 123 (1986). As an officer of the court counsel (appointed or otherwise) properly acts as "screen" or "filter" of the client's cause, a duty involving both *distillation* and *exclusion*. *Distillation* requires the lawyer to refine underlying facts and argument into a cogent claim for relief, thereby preserving scarce judicial resources oth-

erwise spent navigating through a morass of allegations and legal citation. *Exclusion*, on the other hand, requires the lawyer to decline a client's invitation to present to the court claims not well-grounded in fact and law, as well as refuse to engage in conduct which, although furthering the ends of the client, is nevertheless inconsistent with the lawyer's professional duty to the court. Sometimes, this may involve counseling the client that he is a "damned fool[ ] and should stop." *McCandless v. Great Atlantic and Pac. Tea Co., Inc.*, 697 F.2d 198, 201–02 (7th Cir.1983) (quoting Elihu Root, as quoted in A. Kaufman, *Problems in Professional Responsibility* (1976)). This exclusionary duty is encapsulated in Rule 11's insistence that signed pleadings certify a lawyer's knowledge and belief, "*formed after an inquiry reasonable . under the circumstances*," that the client's claims are arguably grounded in law and likely to have evidentiary support. *See* Fed.R.Civ.P. 11. Ignoring these twin duties renders the lawyer little more than a "hired gun ... [who], once engaged, does his client's bidding, lawful or not, ethical or not." *Griffiths*, 413 U.S. at 731–32, 93 S.Ct. at 2860 (Burger, C.J., dissenting).

**5.** The judge stated:

I don't feel the State has sufficiently—at least for this particular motion—proven either the killing in the perpetration or in the attempt to perpetrate a sexual assault in the first degree and I think the evidence is insufficient for me to allow it to go any further in those two areas and I am going to sustain the defendant's motion in that regard and dismiss at this time that part of the complaint dealing with killing

**1322**

tioner argues that that dismissal, under double jeopardy and other estoppel/preclusion doctrines, barred his subsequent conviction on first degree premeditated murder.

■ The Double Jeopardy Clause provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." United States Constitution Amendment 5. This protection applies both to successive punishments and to successive prosecutions for the same criminal offense. *United States v. Dixon,* —— U.S. ——, —— —— ——, 113 S.Ct. 2849, 2855–56, 125 L.Ed.2d 556 (1993) (citing *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969)). A dismissal based on insufficient evidence is tantamount to a judgment of acquittal for purposes of double jeopardy, and bars a retrial on the charge dismissed. *See Burks v. United States,* 437 U.S. 1, 16–17, 98 S.Ct. 2141, 2149–50, 57 L.Ed.2d 1 (1978); *United States v. Scott,* 437 U.S. 82, 91, 98 S.Ct. 2187, 2193–94, 57 L.Ed.2d 65 (1978).

■ In alleged successive prosecution cases like this one, "where the two offenses for which the defendant is punished or tried cannot survive the 'same-elements' test, the double jeopardy bar applies." *Dixon,* —— U.S. at ——, 113 S.Ct. at 2856. This "same-elements" or *"Blockburger"* test, first announced in *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), "inquires whether each offense contains an element not contained in the other; if not, they are the 'same offence' and double jeopardy bars additional punishment and suc-

cessive prosecution." *Dixon,* —— U.S. at ——, 113 S.Ct. at 2856.

Despite the well-recognized fact that the *Blockburger* test "is the *sole standard* by which [I] must determine whether a subsequent prosecution violates the Double Jeopardy Clause," [6] neither petitioner nor respondent so much as even mentions that test in its brief, let alone applies it to petitioner's claim. Accordingly, that task is left to me.

Nebraska's first degree murder statute provides:

> A person commits murder in the first degree if he kills another person (1) purposely and with deliberate and premeditated malice, or (2) in the perpetration of or attempt to perpetrate any sexual assault in the first degree, arson, robbery, kidnapping, hijacking of any public or private means of transportation, or burglary, or (3) by administering poison or causing the same to be done; or if by willful and corrupt perjury or subornation of the same he purposely procures the conviction and execution of any innocent person. The determination of whether murder in the first degree shall be punished as a Class I or Class IA felony shall be made pursuant to sections 29–2520 to 29–2524.

*Neb.Rev.Stat.* § 28–303. Applying the *Blockburger* test, I must compare the elements of premeditated murder in the first degree (28–303(1)) with the elements of felony murder (28–303(2)).

■ Petitioner does not (and indeed cannot) argue that the elements of first degree premeditated murder and felony murder in

---

in the perpetration or in the attempt to perpetrate a sexual assault in the first degree of [the victim], however, I am overruling the motion at this time with regard to the purposely or deliberately and premeditatedly [sic] with malice the killing of [the victim], and I am going to overrule their motion there. I feel there is sufficient evidence at this time to proceed. That will be the ruling of the Court at this time. (Bill of Exceptions, Vol. IX, 1600:22–1601:13.)

**6.** *McIntyre v. Caspari,* 35 F.3d 338, 340 (8th Cir.1994) (emphasis added) (citing *Dixon,* —— U.S. at ——, 113 S.Ct. at 2864), *rehearing and suggestion for rehearing en banc denied* (Nov. 23, 1994); *see United States v. Rodgers,* 18 F.3d 1425, 1428 (8th Cir.1994).

In *Grady v. Corbin,* 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), the Court held that a "same-conduct" test should be considered in addition to the *Blockburger* "same-elements" test for purposes of double jeopardy analysis. Under *Grady*'s "same conduct" test, double jeopardy barred a subsequent prosecution in which the government, to establish an essential element of the charged offense, would seek to prove conduct that constitutes an offense for which the defendant has already been prosecuted. *See id.* at 521, 110 S.Ct. at 2093. *Dixon* overruled *Grady,* however, concluding that the "same-conduct" test was unworkable and lacking constitutional authority. *See Dixon,* —— U.S. at ——, 113 S.Ct. at 2864; *Caspari,* 35 F.3d at 340 (acknowledging overruling).

Nebraska are the "same" under *Blockburger*, for it is abundantly clear that they are not. Each offense contains an element not contained in the other. Premeditated murder in the first degree requires a purposeful killing accompanied by deliberate and premeditated malice, which felony murder does not. *See State v. Lyle*, 245 Neb. 354, 358–59, 513 N.W.2d 293 (1994) (discussing elements of premeditated murder); *State v. Bradley*, 210 Neb. 882, 884–85, 317 N.W.2d 99 (1982) (discussing elements of felony murder). Conversely, felony murder requires an underlying felonious act (or attempt) causing death, which premeditated murder in the first degree does not. *See id.* Both *Blockburger* and common sense dictate that first degree premeditated murder and felony murder in Nebraska are not the "same offense" for purposes of the Double Jeopardy Clause's prohibition of "be[ing] subject for the *same offen[s]e* to be twice put in jeopardy of life or limb" (emphasis added). Thus, a directed verdict on the latter does not in any way bar subsequent prosecution or conviction on the former.

In his brief petitioner presents a number of alternative arguments, none of which is convincing in its own right and more importantly fail to address the only dispositive issue of this claim—the *Blockburger* analysis discussed above. While these arguments approach the issue from a number of different doctrines, including double jeopardy, issue preclusion, collateral estoppel and *res judicata*, they all fail upon the same deficiency: petitioner's failure to demonstrate that Nebraska's felony murder and premeditated murder are somehow the same, i.e., that a dismissal of the former resolved issues that logically barred trial on the latter.

Stated another way, petitioner has failed to show that there are any "factual issues and ultimate facts previously resolved favorably"

with respect to him (Petitioner's Brief, at 48) that barred a subsequent prosecution on a premeditated murder theory. The only "factual issue[] [or] ultimate fact[] previously resolved favorably" for petitioner was the trial judge's conclusion that there was no evidence of any underlying felony necessary to support a felony murder theory.[7] There is no inconsistency whatsoever between this conclusion and a prosecution on a premeditated murder theory; petitioner need not have sexually assaulted the victim to have purposefully killed her with malice aforethought.

Petitioner attempts to evade this obvious conclusion by arguing that logical analysis of some basic legal doctrines requires that his conviction be invalidated. Boiled down to its basics, the argument is as follows:

(1) the *mens rea* requirements of felony murder and premeditated murder are "legally equivalent";

(2) the trial judge's dismissal of the felony murder count was a finding that there was no *mens rea* for felony murder; and

(3) double jeopardy, issue preclusion and/or collateral estoppel barred the state from relitigating that finding (and thus no *mens rea* could be shown to support a first degree murder conviction).

(*See* Petitioner's Brief, at 49–55.) I reject petitioner's syllogism for the reason that premises (1) and (2) are legally and factually wrong, rendering (3) moot.

 With respect to premise (1), petitioner misunderstands the law. Petitioner's "legal equivalency" argument relies on Nebraska's felony murder doctrine, which holds that the criminal intent or *mens rea* required in a felony murder charge is constructively imputed from the intent to commit the underlying felony. *See Bradley*, 210 Neb. at 884,

---

7. The trial judge sustained the motion for directed verdict on the felony murder theory because he felt the state lacked sufficient evidence that the murder was committed in the course of a sexual assault. (*See* Bill of Exceptions, Vol. IX, 1601:22–1602–13.) The judge overruled the motion to dismiss with respect to the first degree premeditated murder theory, however, concluding that there was "sufficient evidence at this time to proceed." (*See id.* at 1602:7–12.) One

need not perform a tortured analysis to understand why a dismissal of a felony murder theory should not bar subsequent conviction on a premeditation theory. A conclusion that no evidence of an underlying felony (sexual assault) existed, while necessarily precluding a felony murder conviction, has little if anything to do with whether a killing was done with premeditated malice.

317 N.W.2d 99. That is, the state need only prove that a defendant had criminal intent to commit the underlying felony; separate proof that defendant intended to murder the victim is unnecessary. However, as noted above, premeditated murder requires the specific *mens rea* to *purposefully kill* with deliberate and premeditated malice. *See Lyle, supra.* Thus, petitioner's proposition that the *mens rea* for premeditated and felony murder are "legally equivalent" is simply erroneous.

■■■■■ It appears petitioner believes that an acquittal on felony murder necessarily contains the finding that the defendant lacked any *mens rea* at all, either for the killing or for the underlying felony (Step 2 above), and that it would therefore be logically inconsistent to allow a subsequent prosecution for premeditated murder which requires proof of a specific *mens rea* to kill. Such an argument is logically false. A crime generally consists of two components, both of which must be proved to sustain a conviction: (a) a criminal act (*actus reus*) (b) done with the necessary criminal intent (*mens rea*). For (1) premeditated murder, the *actus reus* (a) is a killing, and the *mens rea* (b) is the specific *mens rea* to kill with deliberate and premeditated malice. For (2) felony murder, the *actus reus* (a) is really two separate acts: (i) a killing; (ii) during the commission or attempted commission of a listed felony. *See State v. McDonald,* 195 Neb. 625, 636–37, 240 N.W.2d 8 (1976). However, the only *mens rea* (b) necessary is that for the underlying felony *actus reus* (2)(a)(ii), since the felony murder doctrine imputes that *mens rea* to the killing *actus reus* (2)(a)(i). *Bradley, supra.*

Thus, a judge should dismiss a felony murder charge when the state has not presented sufficient evidence to prove *both* the necessary *actus reus* and *mens rea.* Specifically, dismissal would be warranted where the state had failed to produce sufficient evidence establishing: (2)(a)(i) *actus reus* for the killing (i.e. the killing did not occur); OR (2)(a)(ii) *actus reus* for the underlying felony (i.e. that the felony did not occur); OR (2)(b) *mens rea* (for the underlying felony).

None of these possible bases for dismissal logically supports petitioner's apparent argument that an acquittal on felony murder necessarily contains the finding that the defendant lacked any *mens rea for the killing,* i.e., (1)(b) above. At base, petitioner wishes to equate showing (1)(b) above with either (2)(a)(i), (2)(a)(ii) or (2)(b), such that a dismissal on any of the latter bases should be construed as a dismissal on the former as well. This argument clearly fails. (2)(a)(i) and (2)(a)(ii) have nothing to do with *mens rea* whatsoever; where no *actus reus* exists, there is no need to proceed to consider whether any underlying *mens rea* exists for that (legally) non-existent act. Dismissal on (2)(b) means only that there was insufficient evidence of *mens rea for the underlying felony,* since the felony murder doctrine imputes that *mens rea* to the killing. Thus, for felony murder, there is *never* a need to assess whether any *mens rea* existed *for the killing,* rather than merely for the underlying felony. Where *mens rea* exists for the underlying felony, the felony murder doctrine imputes it to the killing. Where no *mens rea* exists for the underlying felony, there can be no felony murder charge at all, since an obvious prerequisite to felony murder is an underlying felony committed with the necessary *mens rea* for that felony.

The record suggests (and petitioner has pointed to nothing suggesting otherwise) that the trial judge here dismissed the felony murder charge against petitioner on basis (2)(a)(i) only (insufficient evidence of *actus reus* for the underlying felony).[8] As ex-

---

**8.** I find no reason to presume, as petitioner may, that the trial judge also implicitly dismissed on basis (2)(b) above (insufficient evidence of *mens rea* (for the underlying felony)). Such a presumption requires two irrational assumptions: (1) that the trial judge, after concluding that there was insufficient evidence of an underlying felony (and thus no felony murder charge), nevertheless decided to assess the existence of *mens rea* for the act which he had just determined

legally did not occur; and (2) the judge then chose not to memorialize that assessment in the record.

Even assuming, *arguendo,* that the trial judge *did* implicitly dismiss on basis (2)(b), as I explained above, such a dismissal means only that there was insufficient evidence of *mens rea for the underlying felony,* not for the killing itself,

plained above, that basis has nothing to do with *mens rea* at all, much less with the *mens rea* for the killing itself, which is the determinative *mens rea* component of the first degree premeditated murder conviction petitioner challenges. Since there is no basis for equating the *mens rea* of felony murder and premeditated murder, double jeopardy did not bar petitioner's premeditated murder conviction.

 Petitioner has not demonstrated that Nebraska's felony murder and premeditated murder crimes are somehow the same, i.e., that a dismissal of the former resolved issues that logically barred a retrial on the latter. In the absence of such a showing this

which is the determinative *mens rea* for purposes of first degree premeditated murder.

9. Petitioner's statute of limitations-based argument is also meritless. (*See* Petitioner's Brief, at 73–83.) At the end of all the evidence the trial judge dismissed the voluntary and involuntary manslaughter counts against petitioner for the reason that the three-year statute of limitations period for those offenses had run. *See Neb.Rev. Stat.* § 29–110. Petitioner argues that this dismissal "actually acquitted" him of first and second degree murder as well. (*See* Petitioner's Brief, at 81.) Petitioner cites to *State v. Eckert,* 186 Neb. 134, 181 N.W.2d 264 (1970), which stated:

A man cannot be tried for manslaughter when he has previously been tried for murder of the same person, nor vice versa, for the gist of the charge is the same in both cases, namely, the unlawful killing.

*Id.* at 137, 181 N.W.2d 264; *cf. Grafton v. United States,* 206 U.S. 333, 350, 27 S.Ct. 749, 753, 51 L.Ed. 1084 (1907). The problem, of course, is that petitioner was never "tried for manslaughter" such that the "vice versa" would apply and bar his subsequent conviction for murder. Rather, the manslaughter charges were dismissed as beyond the statute of limitations. Such a dismissal was not an "acquittal," did not resolve questions relating to petitioner's factual guilt or conduct, and thus did not bar petitioner's subsequent conviction for murder. *See, e.g., State v. Casaretto,* 818 S.W.2d 313, 315–16 (Mo.App. 1991); *Cox v. State,* 585 So.2d 182, 189–192 (Ala.Cr.App.1991), *cert. denied,* 503 U.S. 987, 112 S.Ct. 1676, 118 L.Ed.2d 394 (1992); *cf. United States v. Scott,* 437 U.S. 82, 97, 98 S.Ct. 2187, 2197, 57 L.Ed.2d 65 (1978). Here, the trial judge's dismissal of the manslaughter counts as beyond the statute of limitations did not
'actually represent[ ] a resolution [in the defendant's favor], correct or not, of some or all of the factual elements of the offense charged.'

claim must fail, and I shall recommend it be denied.[9]

## DUE PROCESS: DENIAL OF BAIL

 Neb. Const. Art. I, § 9, provides in part: "All persons shall be bailable by sufficient sureties, except for treason, sexual offenses involving penetration by force or against the will of the victim, and murder, where the proof is evident or the presumption great." Petitioner argues that this language creates a protected "liberty interest" under the Fourteenth Amendment that was arbitrarily and capriciously denied him by the trial court. (*See* Petitioner's Brief, at 83–84.) Specifically, petitioner argues that he was denied requested postconviction bail

*Scott,* 437 U.S. at 97, 98 S.Ct. at 2197 (quoting *United States v. Martin Linen Supply Co.,* 430 U.S. 564, 571, 97 S.Ct. 1349, 1355, 51 L.Ed.2d 642 (1977)). Accordingly, no jeopardy attached.

I also reject petitioner's argument that the Nebraska Supreme Court's affirmance of his first degree premeditated murder conviction was an " 'acquittal ... putting (a defendant) twice in jeopardy, and thereby violating the Constitution.' " *United States v. Martin Linen Supply Co.,* 430 U.S. 564, 571, 97 S.Ct. 1349, 1354, 51 L.Ed.2d 642 (1977) (quoting *United States v. Ball,* 163 U.S. 662, 671, 16 S.Ct. 1192, 1195, 41 L.Ed. 300 (1896)); *see* Petitioner's Reply Brief, at 19–21. In *Martin Linen,* criminal contempt proceedings were brought to enforce the terms of an antitrust consent decree. The jury deadlocked, and the trial judge therefore entered a judgment of acquittal pursuant to *Fed.R.Crim.P.* 29(c). The government sought to appeal, and the question before the court was whether a Rule 29(c) acquittal was appealable under 18 U.S.C. § 3731. The Court held that it was not, reasoning that such an appeal would allow the government to in effect try the acquitted defendant a second time in violation of the Double Jeopardy Clause.

Petitioner's case is obviously distinguishable from *Martin Linen,* as his appeal to the Nebraska Supreme Court was for his first degree premeditated murder *conviction,* not of any charge of which he was *acquitted. Martin Linen* would be applicable only if the government had sought to appeal the trial court's dismissal of the felony murder charge, which it did not.

Of course, petitioner's likely response is that he was in fact (or should have been) "acquitted" of first degree premeditated murder by the trial court's dismissal of the felony murder and manslaughter counts against him. As discussed previously, that argument is meritless.

without a sufficient showing or factual finding that with respect to his murder conviction "the proof is evident or the presumption great." (*See id.* at 84–85.) In rejecting the bail request the trial judge concluded

> The motion for—the Defendant's Motion for Post-conviction Bail is overruled. The court has already ruled on the motion for a new trial. The Supreme Court has already ruled the conviction should stand, and where the proof is evident, and the presumption is great has already been determined, and bail will be denied.

(Bill of Exceptions, as amended, Proceedings of April 23, 1991, at 13:9–14.) Petitioner alleges that this conclusion "was made based solely upon the erroneous recollection of the trial court judge and the non-existing written indicia of the Nebraska Supreme Court." (Petitioner's Brief, at 84.)

Even assuming, *arguendo,* that the language of Neb. Const. Art. I, § 9 creates a protected liberty interest, petitioner has not been denied due process, which is all that he is entitled to. The trial judge denied petitioner's postconviction bail request on the basis that "the proof is evident, and the presumption is great has already been determined" by the Nebraska Supreme Court's affirmation of petitioner's conviction. That court explicitly concluded that there existed sufficient evidence supporting petitioner's first degree premeditated murder conviction. *See State v. Nesbitt,* 226 Neb. 32, 37–40, 409 N.W.2d 314 (1987). Thus, in contrast to the *Abbott* case cited by petitioner,[10] the trial judge here *did* supply an opinion or reason for denying petitioner bail. That petitioner may feel that reason is not convincing or inadequately detailed does not make it "arbitrary and capricious" and a denial of due process. I shall recommend that this claim be dismissed.

IT THEREFORE HEREBY IS ORDERED that:

1. Petitioner's motion for an evidentiary hearing (filing 98) is denied.

2. Petitioner's motion for enlargement of time in which to file a reply brief (filing 103) is granted.

FURTHER, IT HEREBY IS RECOMMENDED to the Honorable Richard G. Kopf, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), that the petition for writ of habeas corpus (filing 26) be denied.

The parties are notified that unless objection is made within ten days after being served with a copy of this recommendation, they may be held to have waived any right they may have to appeal the court's order adopting this recommendation.

Dated Jan. 6, 1995.

---

10. *Abbott v. Laurie,* 422 F.Supp. 976 (D.R.I. 1976). Moreover, the *Abbott* line of authority has been explicitly disapproved. *See Jenkins v. Harvey,* 634 F.2d 130, 132 (4th Cir.1980).