_____

No. 95-2061
_____

Thomas Edward Nesbitt,            *
                                  *
     Plaintiff - Appellant,       *
                                  *  Appeal from the United States
     v.                           *  District Court for the
                                  *  District of Nebraska.
Frank X. Hopkins, Warden,         *
Nebraska State Penitentiary,      *
                                  *
     Defendant - Appellee.        *

_____

                  Submitted: December 14, 1995

                     Filed: June 7, 1996
_____

Before BOWMAN and LOKEN, Circuit Judges, and WOLLE,[*] Chief District Judge.
_____

LOKEN, Circuit Judge.

     Thomas Edward Nesbitt was tried in a Nebraska court for the first
degree murder of Mary Kay Harmer.  After the trial court dismissed a charge
of felony murder because of insufficient evidence, the jury convicted
Nesbitt of premeditated murder, and he was sentenced to life in prison.
Nesbitt now appeals the district court's[1] denial of his federal habeas
corpus petition.  <u>Nesbitt v.</u>

_____

     [*] The HONORABLE CHARLES R. WOLLE, Chief United States
         District Judge for the Southern District of Iowa, sitting
         by designation.

     [1]The HONORABLE RICHARD G. KOPF, United States District Judge
for the District of Nebraska, who adopted the report and
recommendation of the HONORABLE DAVID L. PIESTER, United States
Magistrate Judge for the District of Nebraska.

Hopkins, 907 F. Supp. 1317 (D. Neb. 1995).  He argues that the Nebraska Supreme Court in affirming his conviction violated the Double Jeopardy Clause by construing the trial evidence as establishing the acquitted charge of felony murder.  We affirm.

**I.**

For reasons that will become apparent, we summarize the evidence at Nesbitt's trial in the light most favorable to the jury verdict.  In the early morning of November 30, 1975, at Nesbitt's order, Kathleen Ray lured the victim, Mary Harmer, to the house Ray shared with Nesbitt by falsely telling Harmer that many people would be there.  When the women arrived, Ray and a third woman quickly departed.  That left Nesbitt alone with Harmer, who was not seen again until her body was discovered nine years later.

Later that morning, Nesbitt called his neighbor, Wayne Bieber, to ask whether he should kill Harmer because he had raped her and might be in trouble.  Nesbitt also asked Bieber to get some lye, but Bieber did not comply.  Meanwhile, Ray attempted to return to the house but Nesbitt, under the influence of drugs, sent her away.  When Ray returned a second time, an agitated Nesbitt asked if she could "handle it if the Feds were involved."  Nesbitt and Ray then scrubbed the house and burned throw rugs and clothing.  While cleaning, Ray found blood in the kitchen and bathroom.  Nesbitt told Ray that Harmer left the house alive, but later said, "Let's just say she died of an overdose."  Soon after Harmer's disappearance, Nesbitt and Ray left town, taking only a few belongings and changing their identities.

Harmer's naked body was found in a manhole in Iowa.  Forensic experts could not determine the cause of death, but opined that holes in her skull suggested bullet wounds.  The condition of Harmer's teeth and skull suggested that a caustic substance had been poured on her head, and sludge in the manhole was consistent

with a caustic substance such as lye. Nesbitt testified in his own defense that Harmer died of a drug overdose, and that he dumped her body in the manhole to avoid questioning by police, whom he did not trust. Another woman testified that, in 1974, Nesbitt had abducted and raped her and threatened to kill her family if she reported the incident to police.

The State charged Nesbitt with premeditated murder and felony murder, with the underlying felony being sexual assault. No one witnessed a sexual assault, Harmer's decomposed body did not yield physical evidence of sexual assault, and of course, Harmer could not testify to a sexual assault. Therefore, at the close of the State's evidence, the trial court dismissed the felony murder charge for insufficient evidence. But the court submitted premeditated murder, and the jury convicted Nesbitt of that crime.

On direct appeal, Nesbitt argued that the evidence was insufficient to prove premeditated murder. In rejecting that claim, the Nebraska Supreme Court summarized at length the circumstantial evidence supporting Nesbitt's conviction. Its summary included a statement that is the basis for this appeal:

> The jury could infer that Harmer was called to the party at [Nesbitt's] request for purposes of sexual gratification and that the identity of the group and the location were withheld from her at Nesbitt's suggestion. Drugs were furnished to the victim <u>and a sexual assault or at least an attempt was made.</u> The victim was struck to "keep her in line," and sometime during the orgy she died. A strong inference arises from the testimony of Bieber and Ray that a motive for her killing was concealment of the assault.

State v. Nesbitt, 409 N.W.2d 314, 318 (Neb. 1987) (emphasis added). Nesbitt petitioned the Court for a rehearing, arguing that this statement violated his double jeopardy rights because he was acquitted of felony murder. The Nebraska Supreme Court summarily denied that petition.

Nesbitt renews his double jeopardy contention on this appeal. More fully stated, the theory is: (1) Nesbitt's acquittal of felony murder "necessarily resolved that [he] neither perpetrated nor attempted to perpetrate a sexual assault on the deceased"; (2) the Nebraska Supreme Court's opinion demonstrates that "the only way to uphold the first degree intentional murder conviction was to utilize the same issues of fact . . . necessarily resolved by the [trial] Court in [his] favor"; and therefore (3) his conviction for premeditated murder violates the issue preclusion (collateral estoppel) component of the Double Jeopardy Clause.

## II.

The protections afforded an accused by the Double Jeopardy Clause include the basic principle of collateral estoppel: "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." Ashe v. Swenson, 397 U.S. 436, 443 (1970). In a criminal case, a fact previously determined "is not an 'ultimate fact' unless it was necessarily determined by the [factfinder] against the government and, in the second prosecution, that same fact is required to be proved beyond a reasonable doubt in order to convict." Prince v. Lockhart, 971 F.2d 118, 123 (8th Cir. 1992), cert. denied, 507 U.S. 964 (1993).

Our decision in United States v. Brown, 547 F.2d 438 (8th Cir.), cert. denied, 430 U.S. 937 (1977), illustrates this principle. Brown was tried and acquitted of committing perjury before a grand jury investigating a bank robbery. He was then tried for conspiring to commit the robbery. Because the *only* evidence implicating Brown in the conspiracy was factually inconsistent with Brown's acquittal in the perjury trial, we reversed the conspiracy conviction: "Clearly, that same issue of fact had been before the jury in the perjury case and must

-4-

necessarily have been resolved by the jury in favor of Brown. He therefore could not be required to 'run the gantlet a second time.'" 547 F.2d at 443 (quoting Ashe, 397 U.S. at 446).

The conceptual problem with Nesbitt's theory is that it seeks to apply a double jeopardy principle that governs successive prosecution cases like Ashe and Brown to his single, multi-count trial. The shoe will not fit. A review of Supreme Court cases involving allegedly inconsistent verdicts persuades us that, in a single trial of multiple charges, the only relevant question is whether the evidence is constitutionally sufficient to support each count of conviction.

Using Nesbitt's trial to illustrate the inconsistent verdict issue, if the trial court had submitted both murder charges to the jury, and the jury had acquitted Nesbitt of felony murder but convicted him of premeditated murder, the conviction would not be reviewable on the ground that the verdict was inconsistent. As the Supreme Court has explained:

> [R]eview [of the sufficiency of the evidence] should be independent of the jury's determination that evidence on another count was insufficient. The Government must convince the jury with its proof, and must also satisfy the courts that given this proof the jury could rationally have reached a verdict of guilt beyond a reasonable doubt. We do not believe that further safeguards against jury irrationality are necessary.

United States v. Powell, 469 U.S. 57, 67 (1984), construing Dunn v. United States, 284 U.S. 390 (1932). In Nesbitt's case, of course, the trial court rather than the jury acquitted him of felony murder. For our purposes, however, the distinction is irrelevant. Even if the trial court had made *both* rulings after a bench trial, Nesbitt would have no federal constitutional claim that the verdict was inconsistent. As the Supreme Court said in Harris v. Rivera, 454 U.S. 339, 348 (1981):

Apart from the acquittal of [a co-defendant], this record discloses no constitutional error. Even assuming that this acquittal was logically inconsistent with the conviction of respondent, respondent, who was found guilty beyond a reasonable doubt after a fair trial, has no constitutional ground to complain that [the co-defendant] was acquitted.

Read together, Powell and Harris establish that there was no violation of Nesbitt's constitutional rights -- double jeopardy or due process -- so long as the evidence before the jury was constitutionally sufficient to convict him of premeditated murder. To be sure, the trial court's dismissal of Nesbitt's felony murder charge was an acquittal for double jeopardy purposes. See Smalis v. Pennsylvania, 476 U.S. 140, 144 (1986). But his conviction of premeditated murder did not place Nesbitt *twice* in jeopardy because "the criminal rule of collateral estoppel found in Ashe v. Swenson . . . does not apply to verdicts of guilt and innocence rendered in a single trial." Arnold v. Wyrick, 646 F.2d 1225, 1228 (8th Cir. 1981). See also Ohio v. Johnson, 467 U.S. 493, 500 n.9 (1984) ("where the State has made no effort to prosecute the charges seriatim, the considerations of double jeopardy protection implicit in the application of collateral estoppel are inapplicable"). As the district court correctly observed, "At worst, Nesbitt was tried once on alternative theories of murder. American law has long permitted the assertion of alternative theories of first-degree murder in one murder prosecution without concern that the defendant is subject to 'double jeopardy' if convicted on one theory but acquitted on the other." 907 F. Supp. at 1319.[2]

---

[2]Nesbitt relies heavily on Peru v. United States, 4 F.2d 881 (8th Cir. 1925), in which we reversed a conviction on the fifth count of an indictment because the only evidence of guilt was the evidence introduced to prove the first four counts on which the trial court had directed verdicts of acquittal. However, Peru is a sufficiency-of-the-evidence case -- we expressly held that the motion for acquittal on count five "should have been sustained." Id. at 884. Peru does not support Nesbitt's attempt to apply collateral estoppel to a single trial of multiple charges.

With the issue now in proper perspective, we turn to the Nebraska Supreme Court's comment of which Nesbitt complains. The Court was reviewing the sufficiency of the evidence of premeditated murder. Nesbitt's possible motive was of course relevant to the issue of premeditation. See, e.g., State v. Harrison, 378 N.W.2d 199, 203-04 (Neb. 1985). The trial record included all the State's evidence, including evidence tending to prove sexual assault. The State's evidence tended to show that something happened in the hours Nesbitt was alone with Harmer that made him want to kill her. If Bieber was believed, Nesbitt had raped her. But he might also have seriously injured her with a beating or by inducing a drug overdose. Even if the Nebraska Supreme Court overstated the trial evidence when it declared that Nesbitt had sexually assaulted Harmer, the Court's ultimate conclusion was correct -- the evidence of motive plus the evidence of an elaborate cover-up of Harmer's death was sufficient to convict Nesbitt of premeditated murder.[3] Indeed, Nesbitt does not challenge that conclusion under the federal standard for measuring the constitutional sufficiency of the evidence. See Jackson v. Virginia, 443 U.S. 307, 324 (1979).

In these circumstances, Nesbitt's conviction for premeditated murder did not violate his constitutional rights under the Double Jeopardy Clause. His additional contention that the state courts deprived him of due process by denying his requests for postconviction bail is therefore without merit. Because these issues can be resolved on the state court record, the district

---

[3]Thus, the trial evidence belies Nesbitt's assertion that the only way to uphold his conviction is to use facts establishing sexual assault. Although we do not think Ashe v. Swenson applies to a single trial of multiple counts, its collateral estoppel principle would not in any event entitle Nesbitt to habeas relief because his felony murder acquittal did not determine an "ultimate fact" in his prosecution for premeditated murder. Compare United States v. Rodgers, 18 F.3d 1425, 1428-29 (8th Cir. 1994).

court did not err in denying Nesbitt's request for an evidentiary hearing. The judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.