IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

STATE V. RUEGGE

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,
V.
LARRY RUEGGE, APPELLANT.

Filed July 16, 2013.    No. A-12-551.

Appeal from the District Court for Holt County: MARK D. KOZISEK, Judge. Affirmed.

Michael S. Borders, of Borders Law Office, for appellant.

Jon Bruning, Attorney General, and George R. Love for appellee.

INBODY, Chief Judge, and IRWIN and MOORE, Judges.

IRWIN, Judge.

## I. INTRODUCTION

Larry Ruegge was convicted by a jury of burglary. The district court subsequently found Ruegge to be a habitual offender and sentenced him to 14 to 20 years' imprisonment. Ruegge appeals from his conviction for burglary here. On appeal, Ruegge assigns numerous errors, including that there was insufficient evidence to support his conviction for burglary, that the State committed various instances of misconduct, and that the district court erred in overruling Ruegge's objection during the State's closing argument. Ruegge also alleges that he received ineffective assistance of trial counsel.

Upon our review, we find no merit to Ruegge's assertions on appeal. Accordingly, we affirm his conviction for burglary.

## II. BACKGROUND

The State filed a criminal complaint charging Ruegge with burglary pursuant to Neb. Rev. Stat. § 28-507(1) (Reissue 2008) and with being a habitual offender pursuant to Neb. Rev. Stat. § 29-2221 (Reissue 2008). The burglary charge against Ruegge stems from an incident

which occurred in October 2010. Evidence adduced at trial revealed that in the early morning hours of October 28, 2010, the office of Sandy View Nursery, a "swine nursery" which houses and cares for baby pigs, was burglarized. The office door was pried open such that the side of the door was splintered and the metal pieces around the door's knob were "smashed in." When an employee of the nursery arrived to work that morning, she observed that there were multiple items missing from the office, including a toolbox with numerous tools inside, a nightlight, some batteries, and a case of soda.

The identity of the burglar or burglars was disputed at trial. The State presented evidence that Ruegge burglarized the nursery office along with one of his acquaintances, Collin O'Connell. The State's key piece of evidence to tie Ruegge to the burglary was the testimony of O'Connell.

O'Connell testified that on the night of the burglary, Ruegge drove to O'Connell's house in order to pick up O'Connell for a "drive." O'Connell indicated that as a part of this drive, Ruegge took him to the Sandy View Nursery. Ruegge got out of the car and pried the door of the nursery's office open. O'Connell then followed Ruegge inside the office where O'Connell stole some soda, frozen pizzas, bungee cords, and a nightlight, and where Ruegge stole a toolbox. The toolbox stolen by Ruegge was "left" at O'Connell's house, and O'Connell testified that he tried to disguise the toolbox by spray painting his father's initials on it. At the time that O'Connell admitted his involvement in the burglary to police, he also turned over the toolbox in question.

Ruegge's defense focused almost primarily on discrediting O'Connell's testimony. During his cross-examination of O'Connell, Ruegge's counsel attempted to prove that O'Connell was not being truthful about who had actually committed the burglary at the Sandy View Nursery. In order to discredit O'Connell's testimony, counsel questioned him about his extensive history of drug use, including his use of methamphetamines just prior to his interview with police. In addition, counsel asked O'Connell to explain why he had made certain conflicting statements about the burglary. Finally, counsel questioned O'Connell at length concerning the agreement O'Connell had made with the State which provided O'Connell immunity from various criminal charges in exchange for his testimony against Ruegge. After counsel exposed the potential problems with O'Connell's credibility, he presented evidence to establish that O'Connell had actually committed the burglary with another of his acquaintances and not with Ruegge.

After hearing all of the evidence, the jury convicted Ruegge of burglary. The district court subsequently found Ruegge to be a habitual criminal and sentenced him to 14 to 20 years' imprisonment.

Ruegge appeals his conviction here.

### III. ASSIGNMENTS OF ERROR

On appeal, Ruegge assigns and argues eight errors, which we consolidate to four errors for our review. Ruegge first alleges that the evidence was insufficient to support his conviction. He also alleges that the State committed various instances of misconduct during voir dire, the presentation of evidence, and closing arguments. He alleges that the district court erred in overruling his objection to the State's comments during its closing argument. Finally, Ruegge asserts that he received ineffective assistance of trial counsel.

In his brief on appeal, Ruegge also argues that the district court erred in the manner in which it responded to a question posed by the jury during deliberations. However, Ruegge did not assign this assertion as error. An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court. *State v. Kuehn*, 273 Neb. 219, 728 N.W.2d 589 (2007). Because Ruegge did not both assign and argue this issue in his brief, we decline to address his contention concerning the answer to the jury's question on appeal.

## IV. ANALYSIS

### 1. SUFFICIENCY OF EVIDENCE

Ruegge alleges that the State presented insufficient evidence to prove beyond a reasonable doubt that he was involved in the burglary of the Sandy View Nursery. Ruegge also alleges that the district court erred in overruling his motion for a directed verdict which was based upon insufficiency of the evidence. Upon our review, we conclude that the evidence was sufficient to support the conviction for burglary and that, accordingly, the district court did not err in overruling Ruegge's motion for a directed verdict.

### (a) Standard of Review

Regardless of whether the evidence is direct, circumstantial, or a combination thereof, and regardless of whether the issue is labeled as a failure to direct a verdict, insufficiency of the evidence, or failure to prove a prima facie case, the standard is the same: In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the evidence admitted at trial, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. France*, 279 Neb. 49, 776 N.W.2d 510 (2009).

### (b) Analysis

Ruegge was charged with and convicted of burglary pursuant to § 28-507(1). Section 28-507(1) provides, "A person commits burglary if such person willfully, maliciously, and forcibly breaks and enters any real estate or any improvements erected thereon with intent to commit any felony or with intent to steal property of any value."

At trial, the State presented the testimony of O'Connell to establish that Ruegge willfully and forcibly broke into and entered the Sandy View Nursery on October 28, 2010. O'Connell testified that Ruegge drove himself and O'Connell to the Sandy View Nursery and pried the door of the office open. In addition, there was evidence that there was some damage to the door as a result of Ruegge's forcing his way into the nursery.

The State also presented evidence to establish that while Ruegge was inside the nursery, he stole a toolbox full of tools. O'Connell testified about the items that both he and Ruegge took from the nursery. He indicated that Ruegge took the toolbox. The police later recovered that toolbox from O'Connell. O'Connell indicated that Ruegge had "left" the toolbox at O'Connell's home after the burglary.

The evidence presented by the State, if believed by the jury, was sufficient to establish that Ruegge burglarized the Sandy View Nursery on October 28, 2010.

On appeal, Ruegge argues that "O'Connell's credibility is non-existent," because he was given immunity in exchange for his testimony; because he has a history of methamphetamine use; and because he provided inconsistent statements regarding the burglary of the Sandy View Nursery. Brief for appellant at 10. Ruegge argues that O'Connell's testimony should be "ignored" and that if we ignore O'Connell's testimony, "there is no credible evidence . . . which would support . . . proof beyond a reasonable doubt to convict [Ruegge] of [b]urglary." *Id.*

Ruegge's arguments on appeal focus on the credibility of O'Connell. However, the jury, as the fact finder, clearly found O'Connell's testimony to be credible, and we, as an appellate court, do not pass on the credibility of witnesses. See *State v. France, supra*. The jury convicted Ruegge of burglary based on the testimony of O'Connell. And, as we discussed above, the jury was aware of O'Connell's immunity arrangement, his drug use, and his conflicting statements, because Ruegge's counsel cross-examined O'Connell thoroughly regarding these issues.

Because the jury as the trier of fact could have found the essential elements of burglary beyond a reasonable doubt based on O'Connell's testimony, the evidence was sufficient to support Ruegge's burglary conviction. The district court did not err in overruling Ruegge's motion for a directed verdict, and Ruegge's assertions to the contrary have no merit.

## 2. PROSECUTORIAL MISCONDUCT

Ruegge alleges that he is entitled to a new trial based upon prosecutorial misconduct which occurred during voir dire, during the presentation of the State's case, and during the State's closing argument. Upon our review, we conclude that Ruegge's numerous assertions concerning prosecutorial misconduct are without merit.

### (a) Standard of Review

Whether prosecutorial misconduct is prejudicial depends largely on the facts of each case. *State v. Faust*, 269 Neb. 749, 696 N.W.2d 420 (2005). An appellate court reviews a motion for new trial on the basis of prosecutorial misconduct for an abuse of discretion by the trial court. *State v. Castor*, 257 Neb. 572, 599 N.W.2d 201 (1999).

### (b) Voir Dire

Ruegge alleges that the State committed misconduct during voir dire. Specifically, he alleges that the State committed misconduct when the prosecutor informed the jury that as a prosecutor, it is his job to be impartial to the people of Holt County; when the prosecutor told the jury about what one particular witness might be testifying to at trial; and when the prosecutor "badger[ed]" the jury about the necessity of informants in criminal investigations. Brief for appellant at 13.

A party may not raise alleged misconduct of adverse counsel on appeal where, despite knowledge of the alleged misconduct, the party claiming the misconduct failed to request a mistrial and instead agreed to take his or her chance on a favorable verdict. *State v. Anderson*, 207 Neb. 51, 296 N.W.2d 440 (1980).

Despite Ruegge's assertions on appeal that the State committed multiple instances of misconduct during voir dire, he did not specifically object to any of the comments made by the prosecutor during voir dire, nor did he make a motion for a mistrial as a result of any of these instances.

The closest Ruegge came to objecting to the prosecutor's comments occurred when the prosecutor asked potential jurors about their opinions concerning informants who work with police. During this line of inquiry, defense counsel asked to "approach the bench." Defense counsel and the prosecutor apparently approached the trial judge and conversed about something. However, this discussion was held off of the record. As such, our record does not reflect what the parties discussed or whether defense counsel made a specific objection or requested a mistrial. Based on this record, we cannot, and do not, assume that defense counsel objected to the prosecutor's line of inquiry or made a motion for a mistrial as a result of that line of inquiry. See *State v. Trackwell*, 250 Neb. 46, 49, 547 N.W.2d 471, 474 (1996) (it is "incumbent upon an appellant to present a record which supports the errors assigned").

Because Ruegge failed to properly object to the State's conduct during voir dire and failed to make a motion for a mistrial, we conclude that Ruegge failed to preserve for appellate review his assertions concerning the State's misconduct during voir dire.

(c) Presentation of Evidence

Ruegge alleges that the State committed misconduct during its case in chief. Specifically, he alleges that the State committed misconduct when the prosecutor conversed with O'Connell during a break in the trial and when the prosecutor indicated to the jury that it was Ruegge's burden to prove he was not involved in the burglary of the Sandy View Nursery. Upon our review, we conclude that Ruegge's allegations have no merit.

*(i) Conversation With O'Connell*

During the prosecutor's redirect examination of O'Connell, the court excused the jury and "took a break" in order to discuss the resolution of an objection made by defense counsel. After the parties and the court had finished their discussion and just prior to the jury's returning to the courtroom, defense counsel asked that "the record reflect that after [the court's] ruling [on counsel's objection], that . . . O'Connell and [the prosecutor] were outside the courtroom for approximately five minutes before [court] resumed." The court gave defense counsel an opportunity to elaborate on this request or to make a specific motion regarding the issue, but counsel indicated that he was "just ask[ing] that the record reflect that." The court indicated, "The record will so reflect."

On appeal, Ruegge argues that the prosecutor's conversation with O'Connell during this break constituted misconduct. Specifically, he alleges that the prosecutor "took witness O'Connell out to the hallway and discussed his testimony and the issues of attacking his credibility. Witnesses and jurors are instructed not to discuss their testimony outside of the trial in the courtroom." In his brief, Ruegge does not elaborate any further on his assertion. He does not cite any case law to support his contention that it is improper for a prosecutor to have a conversation with a witness during that witness' testimony. In addition, during the trial, Ruegge did not provide any detail about what the prosecutor discussed with O'Connell during the brief

conversation. Essentially, Ruegge has failed to indicate why he believes he was prejudiced by this conversation.

Regardless of whether the conversation was prejudicial, however, we conclude that Ruegge has failed to preserve this issue for appeal because at trial, he did not make a specific objection regarding the conversation, nor did he make a motion for a mistrial. Ruegge merely asked that the record reflect that the prosecutor and O'Connell talked about something in the hallway during the trial. Such a generalized request, without more, is insufficient to preserve for appellate review the question of whether such a conversation constituted misconduct which entitled Ruegge to a new trial.

*(ii) Informing Jury That Ruegge Had*
*Burden to Prove Innocence*

During defense counsel's cross-examination of O'Connell, he asked O'Connell about prior statements O'Connell had made regarding the burglary of the Sandy View Nursery. In particular, counsel asked about testimony O'Connell had provided in a previous hearing. The precise question posed to O'Connell concerning this prior testimony is as follows: "And you were asked the question [at this prior hearing]: So the things that you told the deputies regarding . . . Ruegge's involvement, those things, some - many of those things were not true. And you answered Yes." O'Connell indicated that this statement did, in fact, reflect his prior testimony.

Later, during the State's redirect examination of O'Connell, the prosecutor attempted to demonstrate that defense counsel had mischaracterized O'Connell's prior statements regarding the burglary. As a part of this line of questioning, the prosecutor asked O'Connell, "Now I'm challenging you or the defense to show me where you've ever denied your involvement or . . . Ruegge's involvement in the Sandy View Burglary." Defense counsel objected to the prosecutor's question, and the jury was excused from the courtroom so that the parties could discuss the objection in detail.

During this discussion, defense counsel moved for a mistrial and asserted that "[t]he prosecutor has misrepresented the role of [the] defense" by insinuating that the defense has a burden to prove anything. Ultimately, the court sustained counsel's objection, overruled the motion for a mistrial, and provided a specific instruction to the jury regarding the prosecutor's question. When the jury returned to the courtroom, the court stated:

> Before we took our break, the [prosecutor] had proposed a question that "I'm challenging the defendant to show me where you've ever denied your involvement or . . . Ruegge's involvement in the Sandy View burglary." There was an objection made by [Ruegge]. That objection is sustained and the jury is again reminded that [Ruegge] has no burden. The burden is always upon the state.

On appeal, Ruegge argues that the prosecutor's question constituted misconduct and that the court erred in overruling his motion for a mistrial. Specifically, he asserts, "Whether the Jury was properly admonished or not, the prosecutor['s] misconduct already prejudiced [Ruegge] by stating [he] had some burden of proof." Brief for appellant at 14.

If an objection or motion to strike is made and the jury is admonished to disregard the objectionable or stricken testimony, ordinarily, error cannot be predicated on the allegedly

- 6 -

tainted evidence and a mistrial should not be granted. *State v. Archbold*, 217 Neb. 345, 350 N.W.2d 500 (1984).

In this case, the district court indicated to the jury that it was to disregard the prosecutor's question which had insinuated that the defense had a burden to prove anything. In fact, the court went one step further and reminded the jury that the defense has no burden and that the burden is always upon the State. Ruegge does not explain in his appellate brief why the court's admonition to the jury did not properly address the prosecutor's improper question, nor does he explain why he was prejudiced in spite of the court's admonition.

Given the court's reminder to the jury that the defense has no burden, we cannot say that the district court erred in overruling Ruegge's motion for a mistrial. Ruegge's assertions to the contrary have no merit.

(d) Closing Argument

Ruegge alleges that the State committed misconduct during its closing argument. Specifically, he alleges that the State committed misconduct when the prosecutor discussed information that was not presented to the jury as evidence; compared the jury's experiences to the experience of the victim; discussed the credibility and intelligence of the jury; said that the prosecutor had "done his job"; and explained that the prosecutor was on the same side as the jury, because they were all citizens of Holt County.

Ruegge did not specifically object to any of the comments made by the prosecutor during closing arguments, nor did he make a motion for a mistrial as a result of any of these instances. As we discussed above, because Ruegge did not properly object or move for a mistrial, he has waived appellate review of his assertion that the prosecutor committed misconduct during his closing argument. See *State v. Anderson*, 207 Neb. 51, 296 N.W.2d 440 (1980).

3. OBJECTION DURING STATE'S CLOSING ARGUMENT

During defense counsel's closing argument, he argued that O'Connell's testimony was the only evidence which tied Ruegge to the burglary of the Sandy View Nursery and that such testimony was not believable. Counsel asserted that O'Connell had many reasons to lie to police and to the jury. Counsel indicated that one of those reasons was the arrangement made between O'Connell and the State which provided O'Connell immunity from certain criminal charges in exchange for his testimony against Ruegge. Counsel also asserted that the prosecutor was culpable for giving O'Connell a reason to lie.

During the State's rebuttal argument, the prosecutor attempted to counter the assertions made by defense counsel concerning O'Connell's credibility and concerning his own responsibility for providing O'Connell with immunity. The prosecutor told the jury, "The blame game is an old defense strategy. See, it's all my fault." Defense counsel objected to the prosecutor's statement, and a discussion was held about the objection outside the presence of the jury and off of the record. After this discussion, the court indicated, on the record, that the objection was overruled and that defense counsel had "raised" the issue.

On appeal, Ruegge argues that the court erred in overruling his objection to the prosecutor's statements during the rebuttal argument. However, Ruegge does not assert why the district court erred in overruling the objection, nor does he explain exactly why the prosecutor's

comments were inappropriate. In fact, Ruegge's entire argument concerning this issue consists of the following two sentences: "The Court erred in overruling [Ruegge's] Objection to Inappropriate Statements made by the prosecutor. The prosecutor stated that the blame game is an old defense strategy and it is the entire prosecutor's fault." Brief for appellant at 17. An argument that does little more than to restate an assignment of error does not support the assignment, and this court will not address it. See *State v. Mata*, 275 Neb. 1, 745 N.W.2d 229 (2008).

Moreover, the specific basis for Ruegge's objection to the prosecutor's comments does not appear in our record. After defense counsel indicated to the court that he had an objection, he asked to "approach," and then a discussion was held off of the record. The court then indicated, on the record, that the objection was overruled. We cannot definitively determine from our record the basis for Ruegge's objection. Accordingly, we conclude that Ruegge's assertion that the court erred in overruling his objection has not been preserved for appeal. It is incumbent upon an appellant to supply a record which supports his or her appeal. *State v. Harris*, 263 Neb. 331, 640 N.W.2d 24 (2002).

### 4. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Ruegge asserts that his trial counsel was ineffective in a number of respects. To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that counsel's performance was deficient and that this deficient performance actually prejudiced his or her defense. *State v. Young*, 279 Neb. 602, 780 N.W.2d 28 (2010). The two-prong ineffective assistance of counsel test need not be addressed in order. *State v. Nesbitt*, 279 Neb. 355, 777 N.W.2d 821 (2010).

When considering whether trial counsel's performance was deficient, there is a strong presumption that counsel acted reasonably. *Id*. Furthermore, trial counsel is afforded due deference to formulate trial strategy and tactics. When reviewing a claim of ineffective assistance of counsel, an appellate court will not second-guess reasonable strategic decisions by counsel. *Id*.

A claim of ineffective assistance of counsel need not be dismissed merely because it is made on direct appeal. *State v. Young, supra*. The determining factor is whether the record is sufficient to adequately review the question. *Id.*

Because Ruegge has different counsel in this appeal from trial counsel, Ruegge can make a claim for ineffective assistance of trial counsel on direct appeal. See *State v. York*, 273 Neb. 660, 664, 731 N.W.2d 597, 602 (2007) ("where appellate counsel is different from trial counsel, a defendant must raise on direct appeal any issue of ineffective assistance of trial counsel which is known to the defendant or is apparent from the record, or the issue will be procedurally barred on postconviction review").

We now turn to Ruegge's specific claims.

### (a) Failure to Object During Deputy Parks' Testimony

Ruegge alleges that trial counsel was ineffective for failing to object to certain testimony provided by the investigating officer in the case, Deputy Mike Parks. Specifically, Ruegge alleges that counsel failed to object when Deputy Parks testified about what O'Connell told

Deputy Parks during an interview and about O'Connell's identification of the toolbox stolen from the Sandy View Nursery. Upon our review, we conclude that the testimony provided by Deputy Parks was cumulative in nature and that, as such, Ruegge did not suffer prejudice from counsel's failure to object to that testimony.

At trial, Deputy Parks testified that during an interview with O'Connell, O'Connell admitted that he and Ruegge committed the burglary of the Sandy View Nursery. Deputy Parks testified that O'Connell told him that Ruegge pried the door of the nursery's office open and that they both entered the office and took certain items. O'Connell stated that Ruegge stole a toolbox. O'Connell then identified that toolbox when it was found at his residence.

Similarly, at trial, O'Connell testified that he and Ruegge committed the burglary of the Sandy View Nursery. O'Connell told the jury that Ruegge pried the door of the nursery office open and that they both entered and stole certain items. O'Connell testified that Ruegge stole a toolbox. Ruegge then identified that toolbox in court. In addition, O'Connell testified that he had relayed all of this information to Deputy Parks during an interview.

O'Connell's testimony would be sufficient, even without Deputy Parks' testimony, to support the jury's finding that Ruegge was guilty of the burglary of the Sandy View Nursery. Given that the testimony of Deputy Parks was largely cumulative, we cannot say that trial counsel's failure to object to it resulted in any prejudice to Ruegge. Where the evidence is cumulative and there is other competent evidence to support the conviction, the improper admission or exclusion of evidence is harmless beyond a reasonable doubt. See *State v. Williams*, 259 Neb. 234, 609 N.W.2d 313 (2000).

Because Ruegge cannot demonstrate he was prejudiced by counsel's failure to object, his assertion is without merit.

Ruegge also alleges that trial counsel was ineffective for failing to object when Deputy Parks agreed with the prosecutor's assertion that O'Connell is "no Boy Scout." Ruegge asserts that this statement is "an improper characterization of witness O'Connell." Brief for appellant at 18. However, Ruegge does not explain how he was prejudiced by this statement.

O'Connell was the State's key witness against Ruegge at trial, and Deputy Parks' testimony that O'Connell is not a "Boy Scout" puts O'Connell's character into question. Such a negative characterization of O'Connell could only bolster Ruegge's defense. This is particularly true because Ruegge's defense focused on demonstrating that O'Connell was not a credible witness. Because Ruegge has failed to allege how he was prejudiced by Deputy Parks' characterization of O'Connell, we find his assertion that counsel was ineffective for failing to object to this testimony to be without merit.

(b) Counsel's Failure to Request
Jury Instruction

Ruegge alleges that trial counsel was ineffective for failing to request a jury instruction concerning how the testimony of a "co-defendant" should be "interpreted." Brief for appellant at 19. The record before this court is insufficient to adequately review Ruegge's assertion.

We first note that it is not entirely clear what jury instruction Ruegge is claiming should have been requested. There was no "co-defendant" in this case. O'Connell was held out to be an accomplice to the burglary, but because he was never charged with any crime as a result of his

involvement, he cannot be considered as Ruegge's codefendant. However, to the extent that Ruegge is asserting that trial counsel should have requested a specific instruction about how the jury is to consider testimony of an accomplice, we find that the record is insufficient to review whether counsel was ineffective.

The district court held an "informal" jury instruction conference with the parties. This informal conference was held off of the record, and as such, what transpired at this conference is not included in our record on appeal. After this informal conference, the court held a very brief formal jury instruction conference. This conference was held on the record. At this conference, defense counsel indicated he had no objection to the proposed jury instructions and he did not request additional jury instructions. But, because we do not know what transpired at the informal jury instruction conference, we do not know for certain that defense counsel did not request a jury instruction concerning accomplice testimony at that time.

Moreover, even if defense counsel did not ever request such a jury instruction, our record does not disclose why he did not do so or whether his failure to do so amounted to reasonable trial strategy.

### (c) Improper Handling of State's Question
### Regarding Ruegge's Burden at Trial

Ruegge alleges that trial counsel was ineffective in objecting to the State's question to O'Connell which suggested that Ruegge somehow had a burden to prove his innocence. However, Ruegge does not specifically assert how counsel's performance was deficient. As we discussed more thoroughly above, counsel objected to the State's question and motioned for a mistrial. The district court properly sustained the objection and overruled the motion for a mistrial. In addition, the court reminded the jury that the burden to prove a defendant guilty always rests with the State and that Ruegge did not have a burden to prove anything. Ruegge's counsel vehemently argued to the district court that the instruction to the jury was not enough to remedy the prejudicial effect of the prosecutor's question. The district court disagreed with counsel's assertions, and on appeal, we agree with the district court that the instruction to the jury was sufficient. Based on our analysis, we find that counsel's performance in objecting to the State's question was not deficient and that Ruegge's assertion to the contrary is without merit.

### (d) Failure to Object to Alleged Instances
### of Prosecutorial Misconduct

Ruegge alleges that trial counsel was ineffective in failing to object to the instances of prosecutorial misconduct which occurred during voir dire, the State's presentation of its evidence, and the State's closing arguments. We have detailed Ruegge's specific claims of prosecutorial misconduct in our analysis above. We do not repeat each of his claims here, because, ultimately, we conclude that our record is insufficient to review Ruegge's claims that his trial counsel was ineffective for failing to object to each of these allegations of misconduct.

The decision about whether to make an objection during a trial has long been considered an aspect of trial strategy. See *State v. Huston*, 285 Neb. 11, 824 N.W.2d 724 (2013). In fact, the Nebraska Supreme Court has previously discussed the notion that a decision not to object could be explained by counsel's calculated strategy not to highlight the objectionable material. See *id.*

Because the decision about whether to object is considered an aspect of trial strategy, we must consider trial counsel's strategy when reviewing his failure to object to each instance of alleged prosecutorial misconduct.

As we stated above, when reviewing claims of alleged ineffective assistance of counsel, trial counsel is afforded due deference to formulate trial strategy and tactics. See *State v. Nesbitt*, 279 Neb. 355, 777 N.W.2d 821 (2010). And, there is a strong presumption that counsel acted reasonably, and an appellate court will not second-guess reasonable strategic decisions. *Id.* Because of this deference, the question whether the failure to object was part of counsel's trial strategy is essential to a resolution of Ruegge's ineffective assistance of counsel claims.

There is no evidence in the record that would allow us to determine whether Ruegge's trial counsel consciously chose as part of a trial strategy not to object to the alleged instances of prosecutorial misconduct identified on appeal. Therefore, because the record is insufficient to adequately review Ruegge's claims of ineffective assistance of counsel, we do not reach these claims on direct appeal.

## V. CONCLUSION

Upon our review, we affirm Ruegge's conviction for burglary. We find that there was sufficient evidence presented at trial to support his conviction and that Ruegge's assertions of error on appeal are without merit.

As to Ruegge's claims of ineffective assistance of trial counsel, we find that he was not denied effective assistance of counsel when counsel failed to object to certain testimony offered by Deputy Parks and when counsel motioned for a mistrial after the prosecutor suggested that Ruegge had a burden to prove his innocence. We find that the record is insufficient to review the remaining grounds for Ruegge's ineffective assistance of counsel claim.

AFFIRMED.