777 N.W.2d 821 (2010)
279 Neb. 355
STATE of Nebraska, appellee,
v.
Thomas Edward NESBITT, appellant.
No. S-09-350.
Supreme Court of Nebraska.
January 29, 2010.
*823 Clarence E. Mock and Matthew M. Munderloh, of Johnson & Mock, Oakland, for appellant.
Jon Bruning, Attorney General, and James D. Smith for appellee.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

NATURE OF CASE
McCORMACK, J.
Thomas Edward Nesbitt appeals from an order of the district court denying his motion for postconviction relief. See State v. Nesbitt (Nesbitt II).[1] After a hearing, the district court denied Nesbitt's postconviction relief on the issue of whether Nesbitt was denied effective assistance of counsel when his trial counsel failed to assert objections to the prosecutor's use of Nesbitt's postarrest, post-Miranda silence to infer guilt.

*824 BACKGROUND
The facts of this case are fully set forth in the direct appeal from Nesbitt's conviction, State v. Nesbitt[2] (Nesbitt I), and in Nesbitt II and will not be repeated herein except as necessary.
In 1986, a jury found Nesbitt guilty of first degree murder for the death of Mary Kay Harmer. In Nesbitt I, his conviction was affirmed.[3] In Nesbitt II, this court considered the district court's denial of postconviction relief without an evidentiary hearing. We affirmed the district court's order denying postconviction relief without a hearing on all but one issue: whether trial counsel was ineffective for failing to make objections under Doyle v. Ohio[4] to statements made by the prosecutor on cross-examination and in closing arguments. The following facts set forth Nesbitt's claim that his trial counsel was ineffective for failing to make Doyle objections to certain statements made by the prosecution:
During Nesbitt's murder trial, Nesbitt was questioned on direct examination about prearrest statements he made to police in 1975, just after Harmer's disappearance. On direct examination, Nesbitt admitted that he told police that Harmer had been at his home on the night of November 30 but left the next morning. At trial, Nesbitt testified to a different version of events.
Nesbitt testified at trial that he and Harmer, along with one or two other persons at various times, were in his home on the night of November 30, 1975. He testified that all persons in the home were using controlled substances. According to Nesbitt's testimony, Harmer excused herself to go to the bathroom, and when she did not return a short time later, he went to the bath-room and found her lying on the floor in a pool of vomit. He testified that after determining that she was dead, he cleaned her body and disposed of it, first wrapping it in carpet and placing it in a garage, and then, on the following day, placing the body in a manhole at a housing development near Carter Lake, Iowa. He assumed that Harmer died of a drug overdose and denied killing her.
Nesbitt explained that he did not report Harmer's death to authorities because he did not trust them. Nesbitt further testified that he had had a similar conversation a few days later with other officers who had contacted a female acquaintance of Nesbitt's concerning Harmer's disappearance. Several days after these conversations, Nesbitt left Omaha, Nebraska, and moved to Chicago, Illinois, where he assumed a new identity. He testified that in 1978, law enforcement officials located him in Illinois, ascertained his true identity, and questioned him about Harmer's disappearance.
On cross-examination, Nesbitt again admitted that he originally told law enforcement authorities in 1975 that Harmer left his home while he was asleep. Later in the cross-examination, he was asked:
Q Did you ever tell the story that you told this jury today to anyone who was investigating this case or any-one involved in law enforcement?
A This is not a story; this is what happened.
Q I ask you have you ever told this to anyone who was investigating the case or anybody who involved [sic] in law enforcement before today?

*825 A No.
Counsel did not object to these questions. In his closing argument, the prosecutor made the following statements:
The first time anybody heard Mr. Nesbitt say that, [referring to his testimony that Harmer died of a drug overdose] that's involved in law enforcement or had anything to do with the case, other than he says his attorneys, was yesterday morning.
....
... To talk real briefly about his testimony, of course, he is the last person to testify. He has had access to every report, every depositionhe sat in on someand he is going to get on the stand and he's going to be real straightforward with you and tell you what happened....
....
... When the defendant testified, and [defense counsel] apparently thought I was trying to be a comic or it was a ridiculous cross examination, was the first time I ever talked to him in my life....
....
... There wasn't one timeand I think this offends me more than about anything else about this casethere wasn't one time from November 30th on, until today, that Mr. Nesbitt couldn't have told the Harmers where their daughter's body was anytime. And he didn't have to do it himself, but he sure could have let them know.
In Nesbitt II, after carefully reviewing the trial testimony, we concluded that the questions asked on cross-examination and the statements made in closing arguments were not clearly limited to Nesbitt's silence before he had received Miranda warnings. And we stated that the questions asked on cross-examination and the closing statements could reasonably be interpreted to refer to Nesbitt's post-Miranda silence. As such, we concluded that the prosecution's questions and statements violated Doyle[5] insofar as they were not limited to Nesbitt's prearrest, pre-Miranda contacts with the Omaha police in the days following Harmer's death. However, the record before us was insufficient to affirmatively establish that trial counsel made a conscious, strategic decision not to assert a Doyle objection. Thus, we held that Nesbitt pled facts sufficient to entitle him to an evidentiary hearing on his postconviction claim that his trial counsel was ineffective in not asserting Doyle objections to the prosecutor's questions and statements.
Nesbitt and his trial counsel testified at the evidentiary hearing. Counsel answered questions about his strategy for defense and his knowledge of Doyle. He explained that he was familiar with the Doyle opinion and that "the thought came to [his] mind" that the broad statements made by the prosecutor might be subject to a Doyle objection. But the way he "looked at it was that there was no discussion aboutspecifically about post-arrest, post-Miranda silence." And he "thought the jury could be taking it as ... basically they already knew [Nesbitt] talked to the cops a couple times, and he gave them this story about [Harmer] left."
Further, trial counsel explained that he thought objecting to the statements would be like objecting to part of his defense strategy. He stated: "Part of the defense was that the reason no police were called was because we can't trust them to tell them anything because the end result will be [Nesbitt] getting in trouble." When asked whether it would have made sense *826 to make a Doyle objection, counsel stated, "[U]pon reflection, I could have made an objection." But he explained that he did not think the objection would have been sustained in its entirety. Counsel testified that he did not ask for a mistrial because he thought he and Nesbitt "were winning the case."
Nesbitt testified that he knew what Miranda warnings were and that he had been given Miranda warnings on at least four different occasions in 1978 by authorities in Illinois and in 1984 in Indiana. Nesbitt testified that he was again given Miranda warnings in Omaha in 1984 by an officer of the Omaha Police Department. Each time Nesbitt was read his rights, he exercised his right to remain silent. Nesbitt testified that trial counsel was aware that he had been given Miranda warnings.
Nesbitt also testified about his discussions with trial counsel concerning trial strategy. Nesbitt testified that he knew he was going to take the stand from "day one" and that he knew he was going to have to explain his prearrest behavior. Nesbitt claimed that he and trial counsel never specifically discussed trial strategy.
According to trial counsel, he and Nesbitt had several conversations during voir dire regarding which jurors they liked and disliked. Counsel testified that he did not discuss with Nesbitt any specific trial strategy he had about allowing the prosecution to make comments regarding Nesbitt's post-Miranda silence. However, counsel testified that he and Nesbitt discussed generally what kind of questions the prosecutor would ask Nesbitt and that they discussed the approach the prosecutor would take. The "question of Doyle per se was never discussed" because counsel did not think it was going to be an issue.
Following the evidentiary hearing, the district court entered an order denying Nesbitt's motion for postconviction relief. In its order, the district court found that there was insufficient evidence to establish that Nesbitt had received Miranda warnings in 1984 by the Omaha police officer. The district court also concluded that regardless of whether Nesbitt had received Miranda warnings, he failed to prove that he received ineffective assistance of counsel. In so concluding, the district court found that trial counsel was sufficiently aware of Doyle and that his decision not to object was reasonable. The district court explained that Nesbitt was going to testify about his distrust of police and that he purposefully told law enforcement nothing. Thus, the district court found Nesbitt failed to prove both that his trial counsel's performance was deficient and that he was prejudiced by counsel's performance.
Following the district court's order, Nesbitt filed a motion for new trial arguing that the district court was clearly wrong in finding that he did not receive Miranda warnings. The district court overruled Nesbitt's motion for a new trial. The district court reiterated its finding that trial counsel's performance was not ineffective because counsel's trial strategy was reasonable and because Nesbitt was not prejudiced by trial counsel's performance. From this order, Nesbitt appeals.

ASSIGNMENT OF ERROR
Nesbitt assigns that the district court erred in denying his request for postconviction relief, concluding in its order that trial counsel was not ineffective for not making Doyle objections to statements made by the prosecution during cross-examination and during closing arguments referring to Nesbitt's post-Miranda silence.

STANDARD OF REVIEW
A defendant requesting postconviction relief must establish the basis for such *827 relief, and the findings of the district court will not be disturbed unless they are clearly erroneous.[6]
A claim that defense counsel provided ineffective assistance presents a mixed question of law and fact.[7] When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error. With regard to the questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in Strickland v. Washington,[8] an appellate court reviews such legal determinations independently of the lower court's decision.[9]

ANALYSIS
Nesbitt had the same counsel at trial as he did on direct appeal. Nesbitt alleges that his trial counsel was ineffective for failing to object when the prosecution impeached his trial testimony both on cross-examination and during closing arguments by referring to his post-Miranda silence, in violation of Doyle.[10] Nesbitt alleges that his counsel acted below all objective standards of reasonableness in his profession by failing to object to the prosecution's remarks. He alleges that this failure was prejudicial because the impeachment offered by the State was a "blanket" attack on his credibility as a witness and that Doyle violations are so inherently prejudicial that reversal of the judgment is mandated in this case.
As discussed above, in Nesbitt II, we held that Nesbitt had pled facts sufficient to entitle him to a postconviction hearing on the issue of whether his trial counsel was ineffective for failing to object to the statements made during cross-examination and in closing insomuch as those statements were not limited to Nesbitt's pre-Miranda statements. Our reasoning for remanding the cause for an evidentiary hearing was that the record before us was insufficient to establish whether trial counsel made a conscious, strategic decision to not object.
Nebraska follows the two-prong test for determining whether a criminal defendant received ineffective assistance of counsel.[11] The first prong is whether counsel performed deficiently, that is, counsel did not perform at least as well as a criminal lawyer with ordinary training and skill in the area. The second prong is whether the deficient performance actually prejudiced the criminal defendant in making his or her defense.[12] The prejudice prong requires that the criminal defendant show a reasonable probability that but for counsel's deficient performance, the result of the proceeding in question would have been different.[13] The two-prong test need not be addressed in order. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed.[14]
When considering whether trial counsel's performance was deficient, there *828 is a strong presumption that counsel acted reasonably.[15] Furthermore, trial counsel is afforded due deference to formulate trial strategy and tactics. When reviewing a claim of ineffective assistance of counsel, an appellate court will not second-guess reasonable strategic decisions by counsel.[16]
After reviewing counsel's testimony at the postconviction hearing, we conclude counsel acted reasonably by not objecting to the prosecution's statements. At the evidentiary hearing, counsel explained that part of Nesbitt's defense was that he was afraid that the police would frame him for Harmer's murder, and that as such, Nesbitt refused to make any statements to law enforcement regarding Harmer's disappearance. Nesbitt himself testified that he knew he was going to have to take the stand and explain that the statements he made to officers in 1975 were incorrect. Nesbitt testified that he was going to take the stand and testify because "the truth had to be said." Nesbitt also testified that he did not talk to the police about what really happened to Harmer because he believed the police would frame him for her murder. Certainly, it was reasonable for trial counsel not to object to statements he interpreted as coinciding with his defense strategy.
Moreover, Nesbitt has failed to show that he was prejudiced by the prosecution's comments. We follow the approach to the prejudice inquiry outlined by the Court in Strickland v. Washington:
In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.[17]
It is undisputed that Nesbitt told officers a different story from the exculpatory story he told at trial. Nesbitt was admittedly a member of the Hell's Angels, which is a group that distrusted all law enforcement personnel. Nesbitt was fully aware that he was going to have to explain to the jury why he made prior inconsistent statements. And part of this explanation included explaining that the reason for his pretrial behavior was that he feared the police would frame him for murder because of his membership in the Hell's Angels, so he kept quiet. Nesbitt himself pointed out his silence before and after arrest during his own testimony. Thus, we fail to see how Nesbitt was prejudiced by the prosecution's comments regarding his silence.

CONCLUSION
Based on the evidence presented at the postconviction evidentiary hearing, we conclude *829 that the district court's finding is not clearly erroneous and that trial counsel's performance was not ineffective. We therefore affirm the district court's ruling.
AFFIRMED.
NOTES
[1] State v. Nesbitt, 264 Neb. 612, 650 N.W.2d 766 (2002).
[2] State v. Nesbitt, 226 Neb. 32, 409 N.W.2d 314 (1987).
[3] Id.
[4] Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976).
[5] Doyle v. Ohio, supra note 4.
[6] State v. Glover, 278 Neb. 795, 774 N.W.2d 248 (2009).
[7] Id.
[8] Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
[9] State v. Glover, supra note 7.
[10] Doyle v. Ohio, supra note 4.
[11] See State v. Jackson, 275 Neb. 434, 747 N.W.2d 418 (2008).
[12] See id.
[13] Id.
[14] See id.
[15] State v. Jim, 278 Neb. 238, 768 N.W.2d 464 (2009).
[16] Id.
[17] Strickland v. Washington, supra note 8, 466 U.S. at 695-96, 104 S.Ct. 2052.