IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

STATE V. SANTANA

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,
V.
HAWK E. SANTANA, APPELLANT.

Filed December 2, 2014.    No. A-14-055.

Appeal from the District Court for Merrick County: MICHAEL J. OWENS, Judge. Affirmed.

Bruce E. Stephens, of Stephens Law Offices, P.C., L.L.O., for appellant.

Jon Bruning, Attorney General, and George R. Love for appellee.

IRWIN, INBODY, and PIRTLE, Judges.

IRWIN, Judge.

## I. INTRODUCTION

Hawk E. Santana appeals an order of the district court for Merrick County, Nebraska, denying his motion for postconviction relief after conducting an evidentiary hearing. On appeal, Santana asserts that the court erred in denying him postconviction relief. We find no merit to Santana's assertions on appeal, and we affirm.

## II. BACKGROUND

In 2011, Santana was charged by information with one count of sexual assault of a child and one count of felony child abuse. After a bench trial, the district court found Santana guilty of sexual assault of a child. The court sentenced Santana to 30 to 32 years' imprisonment.

Santana appealed his conviction, asserting that the evidence adduced at trial was insufficient to sustain the conviction. Santana's counsel on direct appeal was the same as his counsel at trial. This court summarily affirmed Santana's conviction.

- 1 -

In July 2013, Santana filed a motion for postconviction relief. In his motion, Santana asserted that his trial and appellate counsel had been ineffective in various particulars, including failing to sufficiently investigate evidence of the contents of his computer, failing to sufficiently investigate witnesses, refusing to allow Santana to testify in his own behalf, calling Santana's wife as a witness, and not raising all issues that could have been raised on appeal.

The district court conducted an evidentiary hearing on Santana's motion for postconviction relief. In support of his motion, Santana presented testimony from his mother and testified in his own behalf. In opposition to the motion, the State presented testimony from Santana's trial and appellate counsel.

With respect to his assertion that counsel had been ineffective for failing to investigate the contents of Santana's computer, the record indicates that during the pretrial investigation in this case, a computer was seized from Santana's home. The computer apparently contained pornography and photographs of "prepubescent" males. Santana testified that "none of them are, like, under the age of 18. They're all, you know, movie stars. So I don't - there were no kids." Prior to trial, Santana's counsel successfully moved to suppress all evidence concerning the contents of the computer, so that no evidence related to the computer was admissible by the State in seeking to prove that Santana was guilty of the charges brought against him.

With respect to his assertion that counsel had been ineffective for failing to investigate witnesses, Santana testified that he had witnesses that he had wanted counsel to investigate, including nurses who had worked with him throughout a gastric bypass surgery and recovery that occurred during the relevant time period for which he was accused of committing sexual assault of a child, as well as a counselor that the victim had spoken with. Santana acknowledged that he had not asked counsel to speak with the nurses until the day before trial, and he also acknowledged that counsel had deposed a number of potential witnesses during preparation for trial. Santana also acknowledged that counsel had spoken to some of the witnesses related to his bypass surgery.

Santana's trial counsel testified that he had conducted discovery and that he had reviewed Santana's medical history and had considered the potential impact evidence of the gastric bypass surgery would have had on the trial. He testified that he met with Santana's bypass surgeon. He testified that after considering the medical evidence and speaking with the surgeon, he concluded that the surgeon's testimony would not have been beneficial to the case. He testified that he contacted the potential witnesses Santana shared with him and considered what they would be able to testify about and how it would impact the case. He testified that he concluded many of them would not have been allowed to testify or would have presented duplicative testimony on issues that were not in dispute. He testified that any decision not to call specific potential witnesses was made after assessing the case and developing trial strategy.

With respect to his assertion that counsel had been ineffective for refusing to allow him to testify, Santana adduced testimony from his mother indicating that in meetings on the days of trial, Santana indicated to counsel that he wanted to testify, but that counsel had indicated that it "would make him look worse." Santana testified that when the court asked him at trial about whether he wanted to testify, he indicated that he did not want to "[b]ecause [he] looked at [counsel] and [counsel] told [him] no." He acknowledged that he had waived his right to testify, on the record, at trial.

Santana's counsel testified that he had intended to have Santana testify at trial, that he had "written out five or six pages of [his] direct exam . . . for [Santana] to review prior to trial, and [they] had discussed that and gone over that." During the course of the trial, counsel became aware that if Santana testified, the State intended to attempt to use the contents of his computer--previously suppressed--to impeach him. Santana's counsel testified that he discussed with Santana that if the State attempted to impeach his testimony by discussing the contents of the computer, "it would make the judge aware of the things that were on there which probably wouldn't - the judge wouldn't look too favorably upon [Santana], even though - if they were kept out, the judge as a trier of fact would still be aware of that, and [counsel] didn't want that to happen." He testified that "at that point in time, there was no evidence regarding any pornography or any homosexuality - homosexual tendencies or anything like that, and [he] wanted to keep that out of the record." He testified that he shared those concerns with Santana and advised him, as a matter of trial strategy, not to take the stand and that Santana understood and agreed with the strategy.

With respect to his assertion that counsel was ineffective for calling Santana's wife to testify, Santana testified that he told his trial counsel that he did not think his wife would make a good witness "because she gets flustered and gets angry and upset." He testified that he asked counsel not to call her, but that counsel "called her anyway." He indicated that his wife got "pretty confused" during her testimony and that he did not "think it helped."

Santana's trial counsel testified that he had decided to call Santana's wife as a witness because, "in [his] opinion, she was in the best position to relate to the [c]ourt what went on in the household and what the schedules were, as well as [the victim]." He considered her opportunity to have witnessed the crime Santana was alleged to have committed and her ability to testify about Santana's ability to perform sexually. He testified that he had spoken with her on a number of occasions prior to trial and that she "seemed to [him] to be able to articulate things to [him] that [he] thought would be helpful to the case."

After the evidentiary hearing, the district court entered an order denying Santana's motion for postconviction relief. The court specifically held that the record demonstrated Santana's failure to testify in his own behalf at trial was the result of his election to exercise his right not to testify. The court held that Santana had freely, voluntarily, knowingly, and intelligently waived that right and that there was insufficient evidence adduced to suggest his will was somehow overborne by his trial counsel.

With respect to Santana's other assertions concerning his trial counsel's ineffectiveness, the court concluded that counsel's trial strategy was developed in conjunction with conversations between counsel and Santana and that Santana had failed to prove that counsel was ineffective and that any deficient performance had prejudiced him.

This appeal followed.

## III. ASSIGNMENTS OF ERROR

On appeal, Santana has assigned two errors. First, he asserts that the district court erred in denying him postconviction relief. Second, he asserts that the trial court erred in allowing trial to proceed with the Nebraska Commission on Public Advocacy (Commission) "when it had appointed them as counsel."

## IV. ANALYSIS

Santana asserts on appeal that the district court erred in denying him postconviction relief. He reasserts all of his allegations concerning alleged ineffective assistance discussed above in the factual background section. He also argues that the Commission was appointed to represent him at his trial and did not withdraw from representation, but that the trial court allowed the trial to proceed without the Commission's participation. We find the assertions on appeal to be meritless.

### 1. Ineffective Assistance of Counsel

A defendant requesting postconviction relief must establish the basis for such relief, and the findings of the district court will not be disturbed unless they are clearly erroneous. *State v. Hernandez*, 22 Neb. App. 62, 847 N.W.2d 111 (2014). A claim that defense counsel provided ineffective assistance presents a mixed question of law and fact. *Id.* On appeal from a proceeding for postconviction relief, the trial court's findings of fact will be upheld unless such findings are clearly erroneous. *Id.* Determinations regarding whether counsel was deficient and whether the defendant was prejudiced are questions of law that we review independently of the lower court's decision. *Id.*

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that counsel's performance was deficient and that this deficient performance actually prejudiced his or her defense. *State v. Hernandez, supra.* To show deficient performance, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law in the area. *Id.* To show prejudice, the defendant must demonstrate reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* When reviewing claims of alleged ineffective assistance of counsel, trial counsel is afforded due deference to formulate trial strategy and tactics. See *State v. Nesbitt*, 279 Neb. 355, 777 N.W.2d 821 (2010).

In an evidentiary hearing for postconviction relief, the postconviction trial judge, as the trier of fact, resolves conflicts in evidence and questions of fact, including witness credibility and the weight to be given to a witness' testimony. *Id.*

In this case, Santana has asserted that his counsel was ineffective for not investigating evidence relating to the contents of his computer, arguing that counsel could have discovered evidence to demonstrate that the pornography on the computer had been downloaded years prior. The record, however, indicates that Santana's counsel had successfully moved to suppress all evidence of the computer and its contents from trial and that the State was not able to adduce evidence about the computer or its contents. The computer and its contents are most relevant in this postconviction action as they impacted counsel's advice to Santana not to testify.

Santana asserts that his counsel was ineffective for refusing to allow him to testify. He acknowledges that he waived his right to testify, on the record, but argues that his will was overborne by his counsel. Santana's counsel testified that he advised Santana not to testify because doing so would have opened the door to the State's adducing evidence of the contents of Santana's computer to impeach his testimony. Santana indicated that the computer contained pornography, including nude photographs of "prepubescent" males. Santana argues that he could

have explained away the evidence--demonstrated that it had been downloaded years prior--and that he did not believe there was anything damaging about the evidence. Counsel disagreed, discussed the matter with Santana, and advised him to not testify. The trial court did not err in finding that the record supports a conclusion Santana elected to not testify and that the record did not demonstrate that his counsel was ineffective for so advising him or that his counsel overbore his will.

With respect to Santana's assertions that counsel was ineffective for failing to investigate and call witnesses and for calling his wife to testify, we similarly find that Santana has not demonstrated that he is entitled to relief. Santana's counsel testified that these decisions were made as a part of his trial strategy and testified as to why he made the decisions he did. Santana has not demonstrated that this strategy was deficient performance and has adduced no evidence to suggest that the outcome of the trial would have been different had a different strategy been utilized.

Santana's assignment of error concerning the district court's refusal to grant postconviction relief on his assertions of ineffective assistance of counsel is meritless.

### 2. NEBRASKA COMMISSION ON PUBLIC ADVOCACY

Santana also argues on appeal that there was error at his trial related to the lack of participation by the Commission. He argues that the Commission was appointed by the trial court, that the appointment was never withdrawn, and that it was error for the trial court to allow the trial to proceed without the Commission's appearing and participating. This assertion is not supported by the record presented to us and is meritless.

We first note that Santana's motion for postconviction relief does not make any mention of being entitled to such relief because of any issue related to the Commission. Ordinarily, an appellate court will not consider a question not presented to the district court for disposition through a motion for postconviction relief. *State v. Haas*, 279 Neb. 812, 782 N.W.2d 584 (2010). As such, it appears that Santana has not properly raised and presented this issue.

Nonetheless, even assuming the issue was properly before us for consideration and disposition, Santana's assertions about the record as it relates to the Commission are simply erroneous.

The record indicates that Santana's trial counsel filed a motion seeking to withdraw from representing Santana and to have the Commission appointed to represent Santana. Santana's trial counsel testified that he was aware of the reputation of attorneys for the Commission, that criminal defense work is "all they do," and that he wanted Santana to have the best defense possible. As a result, he spoke with attorneys for the Commission about taking the case and that they expressed interest in doing so. Counsel testified, however, that attorneys for the Commission subsequently indicated that they were not interested in the case, "[s]o then [he] informed [Santana] of that and . . . remained on the case."

Santana asserts on appeal that the court "granted said request" to appoint the Commission, "yet the [Commission] never appeared nor did they withdraw." Brief for appellant at 17. The order in the transcript which Santana cites to this court for the notion that the district court appointed the Commission, however, does no such thing. Instead, the order cited to this court and provided in the transcript indicates that a hearing had been held on the motion to

appoint the Commission and that "[s]ubsequent to the hearing . . . counsel for [Santana] has filed a Motion to Withdraw the aforementioned Motion to Appoint" the Commission. The court then specifically "granted [Santana] leave to withdraw his previously filed Motion to Appoint" the Commission.

Santana acknowledges on appeal that he moved to withdraw his request to appoint the Commission, but argues that "an order was entered appointing them." Brief for appellant at 17. He also argues that he is "unaware of any order ever dismissing" the Commission. *Id.*

The record presented to us does not include any order appointing the Commission. Rather, the record presented, and the portion of the record specifically cited by Santana to support his assertions, specifically demonstrates that Santana himself asked the court to withdraw the request to appoint the Commission and that the court granted the relief requested by Santana. The judge's minutes similarly suggest that the order granting the motion to withdraw the motion to appoint the Commission was the only order entered on this matter.

This assertion was not properly presented in the motion for postconviction relief, was not ruled upon by the trial court, could have been raised on direct appeal, and is not supported by the record presented. Santana's assertions about this alleged error are meritless.

## V. CONCLUSION

We find no merit to this appeal. We affirm the district court's denial of postconviction relief.

AFFIRMED.