IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. PAYNE

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

CHRISTOPHER M. PAYNE, APPELLANT.

Filed September 12, 2017.    No. A-16-930.

Appeal from the District Court for Douglas County: GREGORY M. SCHATZ, Judge. Affirmed.

Jason E. Troia, of Dornan, Lustgarten & Troia, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Sarah E. Marfisi for appellee.

INBODY, PIRTLE, and ARTERBURN, Judges.

INBODY, Judge.

## I. INTRODUCTION

Christopher M. Payne appeals from the order of the district court for Douglas County which denied his motion for postconviction relief after remand for an evidentiary hearing. For the reasons set forth herein, we affirm.

## II. BACKGROUND

In 2006, Payne was convicted of first degree sexual assault of a child following a jury trial and was sentenced to 30 to 40 years' imprisonment. His conviction and sentence were affirmed on direct appeal by memorandum opinion. See *State v. Payne*, case No. A-06-509. In 2012, Payne filed a motion for postconviction relief. The district court denied the motion without an evidentiary hearing, and Payne appealed. On appeal, Payne limited his assignments of error only to those claims in his motion for postconviction relief alleging his appellate counsel was prejudicially

- 1 -

ineffective for not raising the ineffectiveness of trial counsel. *State v. Payne*, case No. A-13-0034. By memorandum opinion, this court affirmed in part and reversed in part, remanding for an evidentiary hearing on four of Payne's eight claims. See *Id.* The district court held an evidentiary hearing on June 15, 2016, and again denied the remaining claims under Payne's motion for postconviction relief. Payne presently appeals this denial.

## III. ASSIGNMENTS OF ERROR

Payne assigns, restated, that the district court erred by dismissing his motion for postconviction relief and finding: (1) Payne's appellate counsel was not ineffective for failing to claim ineffective assistance of trial counsel during the voir dire proceedings; (2) Payne's appellate counsel was not ineffective for failing to claim ineffective assistance of trial counsel in not objecting to argument by the State that Payne was a "convicted bisexual;" and (3) Payne's appellate counsel was not ineffective for failing to claim ineffective assistance of trial counsel in not calling witnesses to refute and discredit the testimony given by the State's witnesses.

## IV. STANDARD OF REVIEW

In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief. *State v. Sellers*, 290 Neb. 18, 858 N.W.2d 577 (2015). When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error. *Id.* The determination of the effectiveness of counsel is made under the test outlined in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), which asks whether counsel was deficient and whether the defendant suffered prejudice as a result. The district court's application of this test is reviewed independently of the lower court's decision. *State v. DeJong*, 292 Neb. 305, 872 N.W.2d 275 (2015).

## V. ANALYSIS

Payne contends the district court erred in finding his appellate counsel was not ineffective in failing to claim ineffective assistance of trial counsel for the following: (1) not using preemptive or for cause challenges to strike potential jurors who displayed negative beliefs about bisexuals and asking potential jurors about their beliefs on bisexuality during voir dire; (2) not objecting to argument by the State that Payne was a "convicted bisexual;" and (3) not calling witnesses made known to him to refute and discredit the testimony given by the State's witnesses.

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that counsel's performance was deficient and that this deficient performance actually prejudiced his or her defense. See *State v. Morgan*, 286 Neb. 556, 837 N.W.2d 543 (2013). Deficient performance and prejudice can be addressed in either order. *State v. Sellers*, 290 Neb. 18, 858 N.W.2d 577 (2015). To show deficient performance, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law in the area. *Id.* To show prejudice, the defendant must demonstrate reasonable probability that but for counsel's deficient performance

the result of the proceeding would have been different. *Id.* The entire effectiveness analysis is viewed with a strong presumption that counsel's actions were reasonable and that, even if found unreasonable, the error justifies setting aside the judgment only if there was prejudice. *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Nesbitt*, 279 Neb. 355, 777 N.W.2d 821 (2010).

### 1. VOIR DIRE

Payne first alleges the district court erred in finding appellate counsel was not ineffective for failing to claim ineffective assistance of trial counsel during the voir dire proceedings. Specifically, Payne claims his trial counsel's performance was ineffective during voir dire in two instances leading to the impaneling of a non-impartial jury. First, during the proceedings, Payne asserts it became apparent that three potential jurors were biased against him as a bisexual. Although one of the three was removed through the selection process, two of these individuals were impaneled as jurors. During Payne's trial counsel's review of the juror pool, trial counsel asked the potential jurors whether any of them had prejudices or ill feelings about bisexuality stating:

> I'm sure this part will be important here, although all of it is, but this is really important. There is going to be some issues, and this will come up during the trial, that my client is bisexual, and I'm not going to go into anybody's sexuality because I think that is private and should remain that way today, but . . . will anyone here have any kind of either moral problem thinking that it's just wrong, you know, or any kind of prejudices or ill feelings toward my client because of his sexuality, and, you know, it's a tough question, and if you could raise your hand if anyone does, that would help. . . .

Three potential jurors raised their hands including the two that were later impaneled--M.D. and P.F. In response to a request for elaboration on the issue, M.D. responded:

> [M.D.]: Just being wrong is wrong about that, but Biblically, it's wrong. God created Adam and Eve, not Adam and Steve.
> [Trial Counsel]: I understand that, and I appreciate your up-frontness on that issue because it's important. Will that in any way, that belief and that, would that have any effect on your ability to be fair and impartial in this case?
> [M.D.]: I believe not. I think it wouldn't. I would do my best to make the right to decision.
> [Trial Counsel]: And you could leave any judgments about that kind of activity, about that kind of sexual activity, would you be able to leave that outside of the presence of the jury deliberations and make your decision based on the evidence, credibility and the instructions?
> [M.D.]: Yes.

P.F similarly responded to trial counsel's request for elaboration on her views on bisexuality stating:

[P.F.]: Yes. It's a Biblical moral issue. And as to whether or not I could separate the two, I would do my best, but I cannot absolutely promise that I could.

[Trial Counsel]: Because, you know, we are not really supposed to go into detail about the case, but I can tell you that the evidence, the alleged victim in this case will say that there was a [consensual] relationship, sexual relationship. Would that, knowing that my client is bisexual, would that in any way, is that going to hinder your ability to come up with a fair and impartial decision either way, toward my side or to the State, when you're making your decision back there?

[P.F.]: I would hope not, but that is reaching an area where people are not always 100% in control of how things go.

The third juror who indicated bias was stricken. Payne argues these two exchanges between trial counsel and M.D. and P.F. indicate actual bias and that trial counsel's lack of challenging these jurors for cause constituted deficient performance that prejudiced Payne's defense and deprived him of his Sixth Amendment right to a fair trial.

The second instance of alleged ineffective assistance occurred through Payne's trial counsel's questioning of jurors on their attitudes and beliefs concerning bisexuality and the emphasis he placed on the issue before potential jurors who would be deciding Payne's guilt. Payne seems to argue that, by emphasizing bisexuality and framing questions that could imply there was a question about whether bisexual individuals are implicitly immoral, trial counsel tainted the jury into concentrating on an issue that did not go to the heart of the charges asserted and potentially aided in prejudicing the jury against Payne as an individual. As such, Payne argues this questioning also led to the seating of a non-impartial jury and was therefore deficient assistance. Payne claims, by paneling a biased jury, his trial counsel's actions prejudiced the resolution of his case and led to the guilty verdict.

(a) Striking Jurors

The Sixth Amendment of the United States Constitution guarantees a criminal defendant "the right to a speedy and public trial, by an impartial jury." U.S. Const. Amend. VI and XIV; see also *Lockhart v. McCree*, 476 U.S. 162, 178, 106 S. Ct. 1758, 1767, 90 L. Ed. 2d 137 (1986) (stating "an impartial jury consists of nothing more than jurors who will conscientiously apply the law and find the facts"). Voir dire plays a critical function in assuring the criminal defendant that his constitutional right to an impartial jury will be honored. *State v. Iromuanya*, 282 Neb. 798, 806 N.W.2d 404 (2011); see also *Tinsley v. Borg*, 895 F.2d 520, 523-24 (9th Cir. 1990) (stating that "a defendant is denied the right to an impartial jury even if only one juror is biased or prejudiced"). The principal purpose of voir dire examination is to ascertain whether the proposed juror is free from bias or prejudice, and whether he or she is in such attitude of mind with respect to the case in hand that he or she would be a fair and impartial juror. *State v. Shipps*, 265 Neb. 342, 656 N.W.2d 622 (2003) (quoting *Strong v. State*, 106 Neb. 339, 183 N.W. 559 (1921)); see also *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 554, 104 S. Ct. 845, 849, 78 L. Ed. 2d 663 (1984) (explaining that "voir dire examination serves to protect [the right to a jury capable and willing to decide the case solely on the evidence before it] by exposing possible biases, both

known and unknown, on the part of potential jurors"). There are two means by which a potential juror may be removed from inclusion in the resulting jury due to their bias or prejudice--through challenges for cause and through peremptory challenges. See Neb. Rev. Stat. §§ 29-2005 & 2006 (Reissue 2016).

Section 29-2006 of the Revised Statutes of Nebraska lists the grounds under which a person called as a juror or alternative juror may be removed for cause. Specifically, subsection (2) permits the striking of a potential juror if that individual "has formed or expressed an opinion as to the guilt or innocence of the accused." While the retention or rejection of a venireperson as a juror is a matter of discretion with the trial court, a juror who has indicated an inability to fairly and impartially determine guilt by refusing to subordinate his or her own personal views must be excused for cause under Section 29-2006. *State v. Tomek*, No. A-05-567, 2006 WL 1460405 (Neb. Ct. App. May 30, 2006). However, if it appears from the questioning that the feeling of the juror was not so fixed that he or she would be unable to abide by the court's instruction to the law, removal for cause may not be warranted. *State v. Rowe*, 210 Neb. 419, 315 N.W.2d 250 (1982).

To show a potential juror should be removed for cause based upon a formed or expressed opinion as to the guilt or innocence of the accused, the party bringing the ineffective assistance claim that trial counsel failed to strike a biased juror must show actual, and not implicit, bias. See *Goeders v. Hundley*, 59 F.3d 73 (8th Cir. 1995). Actual bias is "bias in fact" which is a state of mind that leads to an inference the potential juror will not act entirely impartial. *United States v. Torres*, 128 F.3d 38 (2d Cir. 1997). It must be based upon express proof such as by a voir dire admission by the prospective juror of a state of mind prejudicial to a party's interest. See *Id.* In considering whether a potential juror possesses actual bias, the competency of a juror is generally presumed, and the burden is on the challenging party to establish otherwise. *State v. Krutilek*, 254 Neb. 11, 573 N.W.2d 771 (1998).

Here, Payne alleges the two paneled jurors who expressed negative opinions about bisexuality demonstrated they were unable to fairly and impartially determine guilt because of a predisposition against Payne as a bisexual. After three of the potential jurors raised their hands in response to trial counsel's questioning of who might have negative feelings toward bisexuality, trial counsel asked follow-up questions to ascertain the extent of their negative feelings and determine whether they could subordinate these views and determine the question of guilt without prejudice. M.D. responded to this questioning with an affirmative "Yes" when asked whether he could leave any judgments about that kind of sexual activity outside of the presence of the jury deliberations and make his decision based on the evidence, credibility, and instructions. While Payne in his appellate brief attempts to color this response as meek, the Court has received no further evidence of the non-verbal factors of the voir dire proceedings and will only consider the evidence available on review--i.e., the transcript of the voir dire proceedings and the depositions of the parties. See *State v. Krutilek*, 254 Neb. 11, 17, 573 N.W.2d 771, 776 (1998) (stating "[t]he determination of whether or not a person can be an impartial juror is influenced by many factors[, and thus,] situations will arise where the trial court's impression of a juror is not reflected in the record"). As such in the record before us, M.D.'s responses to trial counsel's questioning of the effect of M.D.'s feelings on bisexuality on the charges pending adequately indicate his views were not so fixed that he would be unable to abide the Court's instruction to the law.

P.F. was the third juror to respond to trial counsel's questions concerning bisexuality and was witness to the exchanges between Payne's trial counsel and the other jurors instructing that the issue of bisexuality did not actually go to the charges at issue. While she was seemingly more hesitant to absolutely say she could consider the charges presented without any reference to Payne's sexuality, she did state she "would hope" that she would be able to consider the charges independently of her views on bisexuality. On review, we do not have a record of the non-verbal exchange that accompanied this or any of her responses on this matter. See *id.* (explaining "a juror who states [s]he will 'do [her] best' to be impartial while vigorously nodding [her] head is likely to be viewed differently by the trial court than the juror who says [s]he will 'do [her] best' in a meek voice while avoiding eye contact with members of the court"). It is reasonable that trial counsel believed from her response that she could put aside the issue of her feelings toward bisexuality and judge Payne entirely on the facts, charges, and instructions.

Moreover, the jurors' verdict did not decide whether Payne was bisexual and the charges tried did not include bisexuality as an element. Instead, the issue was whether Payne committed first degree sexual assault of a child. While a bias against Payne as a bisexual could potentially influence a juror to resolve a question of fact against him, it is not intrinsically evident that it would. The transcript of the voir dire proceedings, the questions and explanations by trial counsel, and the responses by M.D. and P.F. were sufficient to put the decision of challenging for cause in the discretion of trial counsel in consideration of his trial strategy and tactics. As such, Payne's trial counsel's decision not to challenge for cause M.D. and P.F. is not deficient. Because there is not a deficient performance in trial counsel not challenging for cause, there is no presumption of prejudice for such inaction. Thus, the district court did not err in determining appellate counsel was not ineffective in declining to claim ineffective assistance of trial counsel in not challenging for cause jurors M.D. and P.F.

Payne additionally claims his appellate counsel was ineffective for failing to claim ineffective assistance of trial counsel for not using his preemptive challenges on M.D. and P.F. for their stated bias against bisexuality. Section 29-2005 of the Revised Statutes of Nebraska allows parties to a jury trial the ability to strike jurors through the use of preemptive challenges. These challenges are pursuant to the parties' individual trial strategies and tactics. See *State v. Clifton*, 296 Neb. 135, 892 N.W.2d 112 (2017) (explaining that a litigant is ordinarily entitled to exercise permitted peremptory challenges for any reason at all, if that reason is related to his or her view concerning the outcome of the case).

As stated above, the transcript of the voir dire proceedings provides reasonable grounds for Payne's trial counsel to make a decision based upon trial strategy and tactics that M.D. and P.F. would be able to impartially decide the charges at issue. Additionally, the record currently available does not address how Payne's preemptive challenges were used and against whom they were used. There remains an abundance of reasons why Payne's trail counsel could have believed M.D. and P.F. were appropriate candidates for the jury and why Payne's trial counsel would have thought other jurors were not as appropriate based upon their responses during voir dire. Therefore, the district court did not err in determining that appellate counsel was not ineffective in declining to raise an ineffective assistance claim for Payne's trial counsel's decision not to use preemptive challenges on jurors M.D. and P.F.

(b) Questioning of Potential Jurors About Bisexuality

In reviewing whether trial counsel provided ineffective assistance to Payne in the questioning of potential jurors concerning their feelings toward bisexuality, we begin with the proposition that "trial counsel is afforded due deference to formulate trial strategy and tactics." *State v. Nesbitt*, 279 Neb. 355, 363, 777 N.W.2d 821, 827-28 (2010). An appellate court will not second-guess reasonable strategic decisions by counsel when reviewing a claim of ineffective assistance. *Id.*

Here, it was reasonable for Payne's trial counsel to ascertain whether the potential jurors may have inseparable bias that would prejudice their determination of the charges presented. During trial, the issue of Payne's sexuality was brought up in the examination of witnesses and through the prosecution's arguments. To understand the juror's feelings on such references before trial and to investigate the depth of those beliefs was reasonable so as to ensure a jury that was not distracted by issues not directly related to the charges in question. As such, the district court did not err in its determination that Payne's appellate counsel was not ineffective in failing to raise an ineffective assistance claim on Payne's trial counsel's decision to question the potential jurors on their beliefs of bisexuality.

### 2. NOT OBJECTING TO PROSECUTION'S USE OF "CONVICTED BISEXUAL"

Payne's second assignment of error claims the district court erred in determining his appellate counsel was not ineffective for failing to claim ineffective assistance of trial counsel in trial counsel's non-objecting to the use of the phrase "convicted bisexual" in the prosecution's closing argument. This phrase, Payne alleges, coupled with various other references made by the prosecution to Payne's sexuality during closing arguments and in eliciting testimony from the victim, L.V., led to the prejudicing of the jury against Payne as a bisexual and a prejudicial verdict based upon this bias. Payne claims trial counsel had a duty to object and was deficient in not doing so.

In the deposition of Payne's trial counsel, he responded to questioning about his approach to the prosecution's description of Payne's sexuality during closing arguments as follows:

Q: One of the other issues he raised that the court of appeals determined was appropriate for an evidentiary hearing has to do with a prosecutor's statement to the jury, and it occurred during closing statements. And the Court's opinion quoted about four sentences, and they--the ones that quote--the sentences they quote are as follows--and so this is taken from the closing statement by the State.

I heard some testimony that Christopher demanded to speak to the parents. He wants to get to the bottom of this. I am sure he was very anxious to speak to the parents. He doesn't want them calling the police on him. He doesn't want the police knocking on his door asking him that question: Why are you, a 34 year old, spending time with a 13 year old behind closed doors.

So he does what he does, which is call the parents. And then he represents himself as someone who is--I am divorced I have my own children, have a successful business. He forgets to mention things like I am a convicted bisexual, that I met your son on the Internet, I have profiles on XY and other gay Web sites. He also leaves those things out.

- 7 -

Do you recall if that is part of a closing statement from the prosecutor at the trial?

A. I don't recall that. In fact, I recall very little from the trial in terms of specific language. Obviously if that's part of the record or the transcript and you're representing that, I would agree that that was said.

Q. Okay. Since you don't recall it, when I went through that if that's something that the prosecutor said, is that something that you would find objectionable in any way?

A. I think that I could object to that, and I believe what the result would have been at that time would have been the judge would have told the jurors to disregard any statements made by the state regarding the defendant being a convicted bisexual would be my guess, but the state meant to say felon at that time, as I believe the defendant--and I don't recall at this minute for sure, but I think the defendant had a prior felony conviction.

. . . .

Q. Okay. You went through an explanation of what probably would have occurred. The prosecutors have what I read to you, and you would have objected.

Is there a reason why--I'll ask it two ways. Is there a reason why you didn't object and that you don't recall, is there a reason why you might not object?

Does it make sense how I asked that?

A. Yeah. I don't recall if I caught that particular statement or not by the State. If I did catch it and he was a felon, then I would have wanted to bring it to the Court's attention to--because at that point the jury knew that he was a bisexual individual. But I wouldn't have wanted to draw any more attention to that particular statement by the Court.

Certainly if there was evidence, and I don't know if there was or not, that he was a felon.

Payne fails to adequately show trial counsel's lack of objection to the prosecution's use of "convicted bisexual" was deficient performance and, by not objecting, trial counsel's inaction led to a prejudicial result. In his deposition, Payne's trial counsel stated that he could not recall the exact use of the phrase "convicted bisexual." However, he went on to explain that, being reminded such phrase was used and its context, he would not have objected to it in view of his trial strategy and tactics. The jury was already aware of Payne being a bisexual having received such information through previous testimony, the voir dire proceedings, and arguments. Further, the jury was also informed, through Payne's testimony at trial, that Payne had previously been convicted of a felony in the last ten years. Objecting to such a statement would likely have inclined the court or the prosecutor to clarify the phrase by pointing out and emphasizing that Payne had previous felony convictions which trial counsel believed to be more detrimental to Payne's case. While the phrase "convicted bisexual" was improper, voicing an objection and emphasizing it to the jury could have produced far more prejudicial effect. Such a strategic decision was reasonable and, given an appellate court will not second-guess reasonable strategic decisions by counsel, the district court did not err in determining Payne's appellate counsel was not ineffective in declining to claim ineffective assistance of trial counsel for not objecting to "convicted bisexual." *State v. Nesbitt*, 279 Neb. 355, 777 N.W.2d 821 (2010).

### 3. FAILURE TO CALL WITNESSES

Lastly, Payne assigns error to the district court's determination that appellate counsel was not ineffective in failing to claim ineffective assistance of trial counsel for his decision to not call additional witnesses. Specifically, Payne alleges he provided his trial counsel with a list of eight names of potential witnesses and that this list was received by trial counsel, reviewed, and mailed back to him. This offered list contained the following individuals: (1) Nicole Slama, Payne's friend who allegedly would testify as to comments the victim made to Payne threatening to send him to prison and refute previous testimony asserting Payne attempted to flee to Florida; (2) Bradley Kroeger, Slama's boyfriend who allegedly would also refute the previous testimony Payne attempted to flee; (3) Cathleen Flannery, Slama's friend who allegedly would confirm testimony from Slama that the victim threatened to send Payne to prison; (4) Zach Boyd, Payne's friend who allegedly would have testified as to the credibility of the victim, testify to the victim's threats to Payne, rebut testimony of Payne's business relationships, and testify about Payne's relationship with another individual during the time he was accused of illegal contact with the victim; (5) Aubrey Meyer, Payne's godson's mother who allegedly would have testified about Payne's relationship with another individual at the time of the illegal contact and rebutted testimony concerning Payne's business and attempt to flee; (6) Ryan Fowler, Payne's business partner who would have allegedly testified as to interactions between Payne and the victim, the relationship he had with Payne, and any interest he may have in Payne being convicted; (7) Joshua "J.J." Tiemeyer who allegedly would have testified concerning his romantic relationship with the victim around the time Payne was accused of illegal contact with the victim; and (8) the victim's chaperone, unnamed on the list who would allegedly have testified about the sleeping arrangements during one of the times of illegal contact for which Payne was convicted. Payne additionally alleges trial counsel would have discovered others through review of this list--including Tyler Palmer and Brandon Body--who could have testified as to Payne and the victim's work relationship and the victim's threats to Payne. Payne asserts trial counsel did not pursue these potential witnesses, subpoena them, or have them testify at trial. By not doing so, Payne claims his trial counsel was deficient in his performance and that such deficiency prejudiced his case.

During his deposition, trial counsel for Payne responded to questioning concerning the list Payne alleges to have provided him explaining that, while he could not recollect whether he had been given such a list, he would have contacted any such potential witnesses. Specifically, in one of his responses, Payne's trial counsel states:

> . . . I can remember that Mr. Payne was very active in his participation in the defense in this case. If he would have turned over any names to me with contact information, I would have either called or tried to track down those people and relay that information to Mr. Payne.

As stated above, trial counsel is afforded due deference to formulate trial strategy and tactics and we will not second-guess reasonable strategic decisions *State v. Nesbitt*, 279 Neb. 355, 777 N.W.2d 821 (2010). The decision to call, or not to call, a particular witness, made by counsel as a matter of trial strategy, even if that choice proves unproductive, will not, without more, sustain

a finding of ineffectiveness of counsel. *State v. Thomas*, 278 Neb. 248, 769 N.W.2d 357 (2009) (quoting *State v. Lindsay,* 246 Neb. 101, 517 N.W.2d 102 (1994)).

During his deposition, although Payne's trial counsel could not recall if he received the list of potential witnesses or if he contacted those individuals, he repeatedly stated that he would have contacted or attempted to track down any potential witness Payne provided him and would have relayed any information they provided to Payne. Based upon this information, trial counsel would have made strategic decisions on how to approach Payne's defense in a cooperative effort with his client. Such a situation is analogous to *State v. Thomas,* 278 Neb. 248, 769 N.W.2d 357 (2009) wherein trial counsel's decision to not call a specific officer to impeach other witnesses was not found to be deficient. Similar to the case at bar, Thomas's trial counsel did not recall the specific officer at issue but testified during a deposition that it was his regular practice to call police officers when their testimony was inconsistent with that of other witnesses. *Id.*

Moreover, there is insufficient evidence to show Payne was prejudiced by his trial counsel's decision to not call the potential witnesses to testify. See *State v. Pankey*, 208 Neb. 377, 303 N.W.2d 305 (1981) (explaining that ineffective assistance of counsel cannot be established where witnesses were not called, absent a showing in the record of the beneficial nature of such witnesses' testimony). As the district court stated in its order denying Payne's motion, "[Payne] has failed to offer any reliable evidence as to what the testimony of the witnesses might have been at trial, beyond what [Payne] thinks they would have testified, nor has [Payne] demonstrated . . . how the testimony of these witnesses might have caused a different result at [Payne's] trial." The only evidence of the content of their likely testimony is Payne's assertions of what they witnessed; there is no direct testimony, affidavits, or any other evidence concerning any of the witnesses listed.

For the reasons stated above, the district court did not err in determining Payne failed to demonstrate his appellate counsel was ineffective in not claiming ineffective assistance of trial counsel in failing to have the listed individuals testify.

## VI. CONCLUSION

We conclude Payne has failed to establish that he received ineffective assistance of appellate counsel with regard to not bringing ineffective assistance of trial counsel in (1) not using challenges for cause or preemptive challenges to strike M.D. and P.F. and questioning the potential jurors on potential bias to bisexual individuals during voir dire, (2) not objecting to argument by the State that Payne was a "convicted bisexual" in the State's closing argument, and (3) not calling witnesses to refute and discredit the testimony given by the State's witnesses. We therefore affirm.

AFFIRMED.